IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-50403

---

CADLE COMPANY,

Plaintiff-Appellant,

versus

1007 JOINT VENTURE; JAMES P. HALBERT;
WILLIAM N. RUSH; LOWELL J. HARO;
GREGORY M. KRONBERG; JAMES P. McMICHAEL;
WILLIAM H. SAYRE; ANTHONY B. SEIDENBERG,
Estate of DAVID H. CHENEY; DAVID G. HOPKINS,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

April 22, 1996

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This appeal arises out of a suit on a promissory note executed by 1007 Joint Venture. The question is whether suit was barred by limitations. The note changed hands several times before The Cadle Company acquired it. Cadle Company then sued Joint Venture to collect a deficiency due on the note. Joint Venture moved for summary judgment, arguing that Cadle Company's suit was time-barred under Texas law. Cadle Company responded that as an assignee of the Federal Deposit Insurance Corporation, it enjoyed the longer federal statute of limitations applicable to suits by the FDIC.

The district court granted summary judgment for Joint Venture, determining that Cadle Company's suit was time-barred under Texas law and concluding that the federal period of limitations did not apply. We affirm.

I.

On August 1, 1983, the Round Rock Industrial Development Corporation agreed to loan $850,000 to 1007 Joint Venture to finance Joint Venture's purchase of an office building located in Round Rock, Texas. On August 11, 1983, Joint Venture executed a promissory note in favor of Round Rock Industrial in the original principal amount of $850,000. Round Rock Industrial immediately endorsed the note to Texas American Bank, Fort Worth.

On July 20, 1989, Texas American/Fort Worth was declared insolvent. The Federal Deposit Insurance Corporation was appointed receiver for Texas American/Fort Worth. On that same day, the FDIC as receiver for Texas American/Forth Worth transferred the Joint Venture note to Texas American Bridge Bank, N.A. (later known as Team Bank). The note was not in default when Texas American was declared insolvent, nor when the FDIC transferred it to Team Bank.

In August 1991, Team Bank sent Joint Venture a formal notice of default and a notice of intention to accelerate. In October 1991, Team Bank foreclosed on the property securing the note, leaving a deficiency. In November 1992, Team Bank merged with Bank One and formed Bank One, Texas, N.A.

In November 1993, The Cadle Company acquired the note from Bank One/Texas. In September 1994, Cadle Company sued Joint Venture in federal district court, asserting diversity jurisdiction and seeking a judgment for the amount due on the note.

Joint Venture moved for summary judgment, arguing that Cadle Company's claim for a deficiency was time-barred under Section 51.003 of the Texas Property Code, which provides that a suit to collect a deficiency resulting from a real-estate foreclosure must be brought within two years after the foreclosure.[1] Joint Venture contended further that, because the note was not in default when the FDIC transferred it (to Team Bank), Cadle Company was not entitled to the six-year statute of limitations governing FDIC actions under the Financial Institutions Reform, Recovery, and Enforcement Act. See 12 U.S.C. § 1821(d)(14). The district court agreed and granted summary judgment for Joint Venture.

II.

Cadle Company ably argues that FIRREA's six-year statute of limitations does not apply to its suit against Joint Venture. We disagree.

FIRREA provides, in relevant part, that "the applicable statute of limitations with regard to any action brought by the

---

[1]"If the price at which real property is sold at a foreclosure sale under section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section." Tex. Prop. Code § 51.003.

[FDIC] as conservator or receiver shall be — (I) in the case of any contract claim, the longer of — (I) the 6-year period beginning on the date the claim accrues; or (II) the period applicable under state law . . . ." 12 U.S.C. § 1821(d)(14)(A). Under FIRREA, "the date on which the statute of limitation begins to run on any claim described in [§ 1821(d)(14)(A)] shall be the later of — (I) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14)(B). FIRREA thus establishes a six-year limitations period for a suit by the FDIC to collect on a note, regardless of the otherwise applicable state statute of limitations.

Cadle Company relies chiefly on Federal Deposit Ins. Corp. v. Bledsoe, 989 F.2d 805 (5th Cir. 1993), in arguing that because it is an assignee of the FDIC,[2] it is entitled to the longer period of limitations that FIRREA extends to actions brought by the FDIC. In Bledsoe, we held that an assignee of the FSLIC enjoys the six-year limitations period that 28 U.S.C. § 2415(a) extends generally to suits brought by federal agencies.[3] We explained: "As [FIRREA] is silent as to the rights of assignees [of the FDIC or the FSLIC], we turn to the common law to fill the gap. Fortunately, while the statute is quiet, the common law speaks in a loud and consistent

---

[2]Cadle claims to be an assignee of Bank One/Texas, which is an assignee of the FDIC.

[3]Section 2415(a) provides that "every action for money damages brought by the United States of an officer or agency thereof which is founded upon any contract express or implied in law of fact, shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a).

4

voice:  <u>An assignee stands in the shoes of his assignor</u>."  <u>Id.</u> at 810.  We concluded that the assignee in <u>Bledsoe</u> "stood in the shoes of the FSLIC, the assignor, and thus received the FSLIC's six year period of limitations."  <u>Id.</u>; <u>see also</u> <u>Davidson v. Federal Deposit Ins. Corp.</u>, 44 F.3d 246 (5th Cir. 1995) (holding that transfer of note in default to FDIC triggered six-year statute of limitations under 28 U.S.C. § 2415(a)).

Joint Venture contends that this case differs from <u>Bledsoe</u> and <u>Davidson</u> in that these notes were in default when transferred to the FSLIC and the FDIC, respectively.  According to Joint Venture, FIRREA's longer period of limitations attached to the defaulted notes in <u>Bledsoe</u> and in <u>Davidson</u> only because the fact of default meant that a claim had accrued before the FSLIC and the FDIC transferred the notes; the existence of a claim, in turn, activated FIRREA's limitations period while the notes were in the hands of the FSLIC and the FDIC.  On this view, FIRREA's six-year period comes into play only if a claim accrues on a note either before the FDIC acquires it, or while the FDIC has it.[4]  Joint Venture thus argues that because the note in this case was not in default until after the FDIC transferred it to Bank One/Texas, <u>Bledsoe</u> is not controlling.

---

[4]Cadle Company points to two Texas cases that held that an assignee received FDIC's six years even though the notes at issue were not in default when the FDIC took over as receiver.  <u>EKA Liquidators v. Phillips</u>, 883 S.W.2d 178 (Tex. 1994); <u>The Cadle Company v. Weaver</u>, 883 S.W.2d 179 (Tex. 1994).  But in those cases, the notes went into default while the FDIC still had them.  Joint Venture argues not that the note must have already been in default when the FDIC acquired it, but that default must have occurred some time before the FDIC transferred it away.

5

Cadle Company responds that in <u>Bledsoe</u>, "[n]o distinction or limitation was made depending upon whether the note in question was in default when transferred by the FDIC." Cadle Company points out that FIRREA itself "makes no distinction between a note that is in default and a note that is not in default when the FDIC obtains possession of the note." It is true that neither <u>Bledsoe</u> nor FIRREA draws an express distinction based on the timing of default. Since the note in <u>Bledsoe</u> was in default when the FDIC acquired it, it is silent on the issue before us, and our task today is to address that silence.

<u>Bledsoe</u>, to be sure, teaches that "[a]n assignee stands in the shoes of his assignor," 989 F.2d at 810. Cadle Company concedes here, as it must, that it did not acquire <u>all</u> of the rights and powers of the FDIC. Thus, our decision today requires that we ask an additional question: did the transfer of the note carry with it the longer limitations period.

We agree with Joint Venture that an assignee of the FDIC can invoke FIRREA's six-year period of limitations only if the note at issue was in default either before the FDIC acquired it or while the FDIC owned it. FIRREA's six-year period of limitations has no significance independent of a claim to which it applies; it attaches only to an accrued claim, not to a performing note. Indeed, the text of FIRREA favors this view; it refers to "the applicable statute of limitations with regard to any <u>action</u> brought by the [FDIC]." 12 U.S.C. § 1821(d)(14)(A). This limitations period begins to run on the later of "the date of the appointment

6

of the [FDIC] as conservator or receiver" or "the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14)(B). The six-year period is not triggered by the FDIC's appointment as receiver; rather, it becomes relevant only upon the accrual of a cause of action, at which time it identifies the starting date for the six-year period. Until a note is in default, there is no claim and hence no need to ask whether FIRREA's federal limitations rule supplants an otherwise applicable state statute of limitations.

We expanded the reach of federal law in Bledsoe in part on federal policy concerns that are here less salient. In Bledsoe, we emphasized the need to facilitate "Congress' policy of protecting failed institutions' assets." 989 F.2d at 811. We quoted Fall v. Keasler, 1991 WL 340182, at *4 (N.D. Cal. Dec. 18, 1991), which explained as follows:

> To hold that assignees are relegated to the state statutes of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets.

Bledsoe, 989 F.2d at 811. These market concerns, to be sure, are sharpest when a note held by the FDIC is in default, since such a note has no value to a prospective transferee whose claim on it would be time-barred under state law. This reasoning loses force with a note performing when the FDIC transfers it; because such a note is not in default, it has value to a prospective transferee and no limitation period is running. A market thus exists for such a note without an extension of FIRREA's limitations period to an

7

assignee of the FDIC.  Though Cadle Company may be correct that a performing note will tend to have a slightly higher value if it carries with it FIRREA's longer limitations period, such a "more money" argument does not by itself mandate that we read FIRREA as displacing an otherwise applicable state statute of limitations. See Davidson, 44 F.3d at 252 (finding that FDIC could not prevail on the ground that there was a federal interest in "simply not depleting the deposit insurance fund").

AFFIRMED.