TWENTY FIRST CENTURY RECOVERY, LTD., as Successor to Certified Savings Association, Plaintiff-Appellant, v. CHARLES MASE *et al.*, Defendants-Appellees.

Fifth District   No. 5—95—0431

Opinion filed May 17, 1996.

Donald Jay Cohen, of Kramer & Frank, P.C., of St. Louis, Missouri, for appellant.

Earl W. Hubbs, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Mormino, P.C., of Alton, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Twenty First Century Recovery, Ltd., a partnership, as successor to Certified Savings Association (Certified Savings), appeals from the circuit court of Madison County's grant of the motion of defendants, Charles Mase and Joan Mase, to dismiss plaintiff's complaint seeking recovery of a deficiency balance on a promissory note resulting from a real estate foreclosure.

On appeal, plaintiff presents two issues for our consideration: (1) whether the trial court erred in finding that the federal six-year statute of limitations provided in the Financial Institutions Reform, Recovery, and Enforcement Act (the Act) (12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996)) does not extend to assignees of the Resolution Trust Corporation, and (2) whether the trial court erred in finding that the Texas statute of limitations period had run, thereby barring plaintiff's claim for a deficiency judgment on the promissory note. We reverse and remand.

I

On July 19, 1991, Certified Savings, operating in the state of Texas, was taken over and placed in receivership by the Federal Deposit Insurance Corporation (FDIC). The Resolution Trust Corporation (Resolution) was appointed as receiver and conducted an auction

of the nonperforming loans. Plaintiff purchased the promissory note at issue here on June 11, 1992, from Resolution. Resolution, in the loan sale agreement with plaintiff, assigned all its right, title, and interest in the note to plaintiff.

On December 6, 1994, plaintiff filed its complaint seeking to recover a deficiency balance of $34,884.57, plus interest, attorney fees, and court costs due on the promissory note resulting from a real estate foreclosure. Defendants filed a motion to dismiss on January 20, 1995, alleging that the notes were executed in Texas and that the promissory agreement states that the note shall be governed by federal law and the laws of the state of Texas and that, pursuant to section 16.004(a)(3) of the Texas Civil Practice and Remedies Code (Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (West 1993)), there is a four-year limitations period on attempts to collect debts; that the instant cause of action accrued in Texas in October 1989; and that, in accordance with section 16.004(a)(3), plaintiff's action is time-barred. Plaintiff subsequently filed a motion to amend its complaint on March 14, 1995.

Defendants' motion to dismiss was heard on March 17, 1995, at which time the trial court entered an order conditionally granting defendants' motion to dismiss, granting plaintiff leave to file its amended complaint, and ordering that defendants' motion to dismiss be reconsidered at a later date.

The trial court reconsidered its order dated March 17, 1995, and entered an order dismissing plaintiff's complaint on May 19, 1995. In its May 19, 1995, order, the trial court concluded that because the contract was entered into in Texas and the real property was located there, the case was governed by the laws of the state of Texas, in particular, the statute of limitations on commercial debts, which is four years pursuant to section 16.004 of the Civil Practice and Remedies Code.

On June 12, 1995, plaintiff filed a motion to vacate judgment, alleging that the six-year statute of limitations of the Act (12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996)) was controlling, that the Texas statute of limitations period was indefinitely tolled because defendants became nonresidents of Texas before the statute ran, and that, therefore, plaintiff's action was not time-barred. Plaintiff's motion included as exhibits a copy of the demand notice for payment from Certified Savings, dated September 14, 1989, addressed to defendant Charles Mase (to establish the date of defendants' default on the note), copies of United States Postal Service return receipts signed and dated by Charles Mase at a Granite City address, and a letter dated March 8, 1993, from defendants' attorney advising the collec-

tion agency of defendants' Granite City address. On June 15, 1995, the trial court denied plaintiff's motion to vacate judgment. Plaintiff now appeals.

## II

Plaintiff contends that the statute of limitations in section 1821(d)(14) of title 12 of the United States Code (12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996)), which grants a six-year limitations period to Resolution for bringing contract actions, inures to the benefit of Resolution's assignees and, therefore, plaintiff's action against defendants is timely. Furthermore, plaintiff asserts that even if the federal statute of limitations did not apply, plaintiff's action is nonetheless timely because the Texas statute of limitations provides for the tolling of the limitations period should the party become a nonresident of the state of Texas before the four-year limitations period has run. We agree.

The issue of whether the six-year statute of limitations in section 1821(d)(14) inures to the benefit of plaintiff as an assignee of Resolution involves the interpretation of a federal statute. While the case before us is one of first impression for this court, several federal courts have addressed this issue: *Federal Deposit Insurance Corp. v. Bledsoe*, 989 F.2d 805 (5th Cir. 1993); *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076 (E.D. Va. 1994); and *Mountain States Financial Resources Corp. v. Agrawal*, 777 F. Supp. 1550 (W.D. Okla. 1991). Because the instant case concerns a right created by federal law, this court will look to federal precedent for guidance in interpreting section 1821(d)(14). *Zimmerman v. Illinois Central Gulf R.R. Co.*, 220 Ill. App. 3d 945, 948, 581 N.E.2d 359, 361 (1991). In this regard, we are guided by the majority opinion among federal courts addressing this issue, *i.e.*, that the six-year federal limitations period is applicable to assignees of FDIC and Resolution.

■ In response to the savings and loan crisis of the 1980s, Congress enacted Public Law No. 101—73 (103 Stat. 183). In enacting this act, Congress sought to "enhance the regulatory and enforcement powers of the Federal financial institutions regulatory agencies." Pub. L. No. 101—73, 103 Stat. 183. To facilitate the efficient recovery of the assets of failed institutions, the Act expanded the statute of limitations period on actions FDIC can bring in its role as receiver or conservator of a failed institution. 12 U.S.C.A. § 1821(d)(14) (West 1989 & Supp. 1996). The Act also established the Resolution Trust Corporation "to contain, manage, and resolve failed savings associations." Pub. L. No. 101—73, § 101, 103 Stat. 183, 187. Under the Act, Resolution, acting in its capacity as a receiver of an insured de-

pository institution, is deemed an agent of the United States and has the same rights and powers as the FDIC. 12 U.S.C.A. §§ 1441a(b)(1)(A), (b)(4)(A) (West Supp. 1996). Thus, actions brought by Resolution, in its capacity as receiver, are governed by sections 1821(d)(14)(A) and (B), which provide, in pertinent part:

"(14) **Statute of limitations for actions brought by conservator or receiver**

(A) **In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law[.]

\* \* \*

(B) **Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues." 12 U.S.C.A. §§ 1821(d)(14)(A)(i)(I), (d)(14)(A)(i)(II), (d)(14)(B)(i), (d)(14)(B)(ii) (West 1989 & Supp. 1996).

The plain language of section 1821(d)(14) expressly refers to actions brought by either FDIC or Resolution in its capacity as receiver or conservator. The statute is silent as to the rights granted to any subsequent holders, assignees, or transferees of FDIC or Resolution with respect to extending the six-year limitations period. However, courts have read the statute in light of the relevant common law principles, congressional intent, and public policy concerns to extend the federal limitations period to assignees of FDIC and Resolution.

The applicability of the federal limitations period to assignees of FDIC was first addressed in *Mountain States Financial Resources Corp. v. Agrawal*, 777 F. Supp. 1550 (W.D. Okla. 1991). In that case the court held that an action brought by an assignee of FDIC against debtors for collection on two promissory notes was subject to the six-year statute of limitations period provided to FDIC by section 1821(d)(14)(A). The *Agrawal* court premised its decision on the common law principle of assignment, specifically, "an assignee stands in the shoes of the assignor, and acquires all of the assignor's rights and liabilities in the assignment." *Agrawal*, 777 F. Supp. at 1552. Citing

to *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 86 L. Ed. 956, 62 S. Ct. 676 (1942), and its progeny, the *Agrawal* court concluded that a strong public policy, in conjunction with the common law principles of assignment, required that FDIC's assignees acquire the six-year Federal limitations period upon transfer of the notes. *Agrawal*, 777 F. Supp. at 1552. The court in *Agrawal* did not articulate the specific public policy upon which it relied in extending the federal limitations period to FDIC's assignees.

This issue was considered again in *Bledsoe*, where the fifth circuit held that the federal statute of limitations applied to an action brought by FDIC to recover payment on a promissory note against the note's guarantor.

In *Bledsoe*, the note in question was originally held by State Savings and Loan Association of Lubbock, Texas (State Savings). State Savings was declared insolvent shortly after the makers defaulted on the note. The Federal Savings and Loan Insurance Corporation (FSLIC) was appointed receiver of State Savings. One day later, the FSLIC, in its capacity as receiver, entered into a purchase and assumption agreement with State Federal Savings and Loan Association (Federal Savings), a private institution. The note returned to FSLIC when Federal Savings was later declared insolvent. FDIC, formerly FSLIC, filed a complaint seeking to recover payment on the unpaid note from Bledsoe, the note's guarantor, one day before the federal limitations period had run. Bledsoe argued that FDIC's action was time-barred because the note was subject to Texas' four-year period of limitations upon transfer from FSLIC to Federal Savings. The court relied upon principles of common law and congressional intent to reach its conclusion that the six-year limitations period is applicable to assignees of FDIC.

The court in *Bledsoe* noted that section 1821(d)(1) is silent regarding the rights of assignees. Therefore, the *Bledsoe* court turned to common law to fill the statutory gaps, relying on the common law principle that "an assignee stands in the shoes of his assignor." *Bledsoe*, 989 F.2d at 810. The court further considered section 336, Comment *b,* Illustration 3, of the Restatement (Second) of Contracts (1979) ("A lends money to B and assigns his right to C[;] C's right is barred by the Statute of Limitations when A's right would have been") and section 3—201 of the Uniform Commercial Code—Negotiable Instruments (see 810 ILCS 5/3—201 (West 1994)) ("transfer of an instrument vests in transferee such rights as the transferor has therein"). *Bledsoe*, 989 F.2d at 810. Applying these principles to the case before it, the court concluded that Federal Savings, FDIC's assignee, stood in the shoes of the assignor, FDIC, and thus received the benefit of FDIC's six-year period of limitations.

To bolster its conclusion, the *Bledsoe* court also drew an analogy to the *D'Oench, Duhme* doctrine, codified at title 12, section 1823(e), of the United States Code, which prevents a party from asserting undisclosed side agreements as a defense against FDIC unless the agreement is in writing, is made contemporaneously with the loan, is approved by the depository institution's board of directors or loan committee, and is recorded in the depository institution's official record. 12 U.S.C.A. § 1823(e) (West Supp. 1996). Section 1823(e), like section 1821(d)(14), expressly applies only to FDIC. However, courts have routinely extended the protections of section 1823(e) to assignees of FDIC. *Bledsoe*, 989 F. 2d at 810; *Federal Deposit Insurance Corp. v. Newhart*, 892 F.2d 47 (8th Cir. 1989). Citing to another fifth circuit case, *Porras v. Petroplex Savings Ass'n*, 903 F.2d 379, 380-81 (5th Cir. 1990), the *Bledsoe* court explained the policy rationale underlying the extension of *D'Oench, Duhme* protections to private assignees of FDIC as follows:

" 'If appellants could successfully assert, as part of an affirmative claim or as a defense, an oral side agreement that tends to diminish the value of an otherwise facially valid instrument acquired by [the assignee], purchasers would be discouraged from acquiring assets from the FSLIC in the future, and the FSLIC would find it more difficult to protect the assets of failed institutions.' " *Bledsoe*, 989 F.2d at 810-11, quoting *Porras*, 903 F.2d at 380-81.

The court found that the policy justifying extension of the *D'Oench, Duhme* doctrine to assignees of FDIC also compelled giving FDIC assignees the benefit of the six-year limitations period in section 1821(d)(14). The court noted that this conclusion is consistent with the common law of assignments and furthers the congressional policy of protecting a failed institution's assets. *Bledsoe*, 989 F.2d at 811.

Defendants maintain that section 1821(d)(14) applies only to Resolution and that the limitations provision is a right "personal" to Resolution and consequently is nontransferable to assignees. To support their contention, defendants rely heavily upon *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076 (E.D. Va. 1994). In *WAMCO*, the court held that the six-year statute of limitations provision of the Act conferred a right personal to Resolution as receiver and, as such, was not transferable to assignees of Resolution. The *WAMCO* court reasoned that the plain language of the statute defined as personal to Resolution the limitations period and that the limitations period was only applicable to Resolution in its status as receiver. *WAMCO*, 856 F. Supp. at 1086. To bolster its reading of the limitations statute, the court relied on the "fundamental circumscrib-

ing principle" of the common law of assignments that " 'an assignment ordinarily carries with it all rights, remedies and benefits which are incidental to the thing assigned, *except those which are personal to the assignor and for his benefit only.'* " (Emphasis added by *WAMCO* court.) *WAMCO*, 856 F. Supp. at 1086, quoting 6A C.J.S. *Assignments* § 76 (1975). The court opined that this fundamental circumscribing principle "would apply with even greater force where the limitation is imposed by statute and where, as here, the statute makes clear that the incidental right, remedy or benefit is in fact personal in nature and for the benefit of the assignor when acting in a certain capacity." *WAMCO*, 856 F. Supp. at 1086.

Upon considering the well-reasoned views of the Federal courts addressing this issue and upon reviewing the authorities cited by each, we decline defendants' urging that we adopt the decision in *WAMCO*. We believe our position, that the federal limitations period extends to assignees of Resolution, accords with the clear legislative purposes of the Act as set forth in the statute's opening provision. These purposes include putting "the federal deposit insurance funds on sound financial footing" and providing "funds from public and private sources to deal expeditiously with failed depository institutions." Pub. L. No. 101—73, § 101, 103 Stat. 183, 187. Extending the longer federal statute of limitations to purchasers of defaulted assets enhances the marketability of these assets by permitting purchasers a longer period of time to bring suit for recovery of amounts due on nonperforming notes. *Bledsoe*, 989 F.2d at 811. Application of the shorter state limitations period would lessen the value of these assets to private purchasers, thereby diminishing the market for assets of failed institutions. *Bledsoe*, 989 F.2d at 811. A diminished market would require that Resolution retain and prosecute all claims expired under the state limitations period since these claims would be time-barred if pursued by a private purchaser. Such a situation would be contrary to the purposes of the Act. Permitting assignees of Resolution to avail themselves of the federal limitations period promotes the expeditious transfer of defaulted assets and allows Resolution's assignees to utilize their resources to seek recovery on defaulted notes, freeing Resolution of this duty and ultimately sparing taxpayers the cost of prosecuting these notes. Failure to extend the limitations period to Resolution's assignees would be inconsistent with the legislative purpose of the Act.

■ Turning to the facts of the case before us, defendants executed a promissory note for $72,200 with Certified Savings on June 29, 1984, for the purchase of real estate located in Cibolo, Texas. On September 14, 1989, Certified Savings sent a letter to defendants

informing defendants that they were in default under the terms of the agreement. On July 19, 1991, Certified Savings was declared insolvent, and Resolution was appointed its receiver. As receiver of Certified Savings, Resolution gained possession of the note. Resolution received the benefit of the six-year limitations period under section 1821(d)(14) on June 19, 1991, when it was appointed receiver of Certified Savings. At this point, the statute of limitations began to run.

Resolution conducted an auction of nonperforming loans, which included the note in question. Plaintiff purchased the note on June 11, 1992, and pursuant to the agreement, Resolution assigned its interest and rights in the note to plaintiff. Upon assignment of the note to plaintiff on June 11, 1992, plaintiff stepped into the shoes of its assignor, Resolution, thereby becoming subject to the same limitations period which would expire on July 19, 1997. As assignee, plaintiff obtained Resolution's claim to the deficiency balance of $34,884.57 due on the note, in addition to the right to assert that claim. Because Resolution could have filed suit to recover the deficiency balance due on the note until July 19, 1997, plaintiff, as assignee, retained the right to assert its claim against defendants for the same period of time. Plaintiff filed its complaint against defendants seeking recovery of the deficiency balance on December 6, 1994. Plaintiff's complaint was filed well before expiration of the six-year limitations period and hence was timely. In light of our conclusion that the federal limitations period is applicable to assignees of Resolution, we find that the trial court erred in dismissing plaintiff's complaint as time-barred pursuant to the Texas four-year limitations period.

Because we conclude that the six-year federal statute of limitations is applicable to assignees of Resolution, we need not address the state limitations issue.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

HOPKINS, P.J., and WELCH, J., concur.