**BRUIN HOLDINGS, INC., Plaintiff,**

v.

**Andrzej K. MODERSKI, Defendant.**

**Civil No. 3:CV–95–2090.**

United States District Court,
M.D. Pennsylvania.

Dec. 31, 1996.

---

Miles H. Shore, Trina M. Bragdon, Saul, Ewing, Remich & Saul, Philadelphia, PA, for plaintiff.

John B. Dunn, Matergia & Dunn, Stroudsburg, PA, for defendant.

## MEMORANDUM AND ORDER

NEALON, District Judge.

*Background*

This action arises from a Mortgage and Note executed on December 3, 1988 by the defendant, Andrzej K. Moderski, in favor of Nationwide Lending Group, Inc. (Nationwide), which financed the purchase of a parcel of land by defendant from Lands Edge Enterprises, Inc. (Lands Edge). That same date, Nationwide assigned the Note to Hill Financial Savings Association (Hill Financial). On March 8, 1989 the Federal Home Loan Bank Board (FHLBB) appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as Conservator for Hill Financial. FSLIC was succeeded as Conservator by Resolution Trust Corporation (RTC) on August 9, 1989. Additionally, RTC was appointed Receiver for Hill Financial on October 12, 1989. On April 9, 1993, RTC, as receiver, assigned all its right, title, and interest in the defendant's mortgage to the Plaintiff, Bruin Holdings, Inc., which was recorded October 31, 1994.

In May of 1989, the defendant discovered that the property subject to the Note included protected wetlands and, therefore, was unbuildable. However, the defendant continued to make payments on the note. On March 16, 1990, the defendant received an engineer's report indicating that the entire property was wetlands and unbuildable because of certain state and federal regulations. Based on the engineer's report, the defendant demanded that the seller, Lands Edge, rescind the contract and refund all monies

expended by the defendant. Simultaneously, the defendant advised Meridian Mortgage, RTC's servicer, that the property was unbuildable and that settlement negotiations were ongoing with the seller.

By letter dated December 14, 1990, the defendant was notified that Meridian Mortgage had transferred the servicing of the loan to Knutson Mortgage Corporation (Knutson). On January 21, 1991, defendant advised Knutson of the problems with the subject property and the proposed filing of a complaint against Lands Edge. RTC responded to the defendant's January 21, 1991 letter on February 19, 1991, advising that any action against the seller was of no concern to it and that it would continue to hold the defendant liable under the Note. On April 23, 1991, the defendant responded to the RTC's letter of February 19, 1991 expressing his disagreement with RTC's position and contending that there was a relationship between Nationwide and Lands Edge because Lands Edge allegedly arranged for the financing.

The defendant filed suit against Lands Edge in this court on April 30, 1991. M.D.Pa.Civil Action No. 3:91–cv–0577. On September 23, 1991, Knutson demanded payment of the full amount of the balance due on the Note. The defendant responded by letter dated October 17, 1991, advising of the litigation pending in this court against Lands Edge. Again, on January 29, 1992, defendant contacted Knutson apprising it of the status of the litigation against Lands Edge.

On June 22, 1992, defendant informed RTC and Knutson of the court approved settlement in the action filed by him against the seller, Lands Edge. The settlement required the defendant to reconvey by quitclaim deed the subject property to Lands Edge which, in turn, agreed to assume any financial obligation to Nationwide, plaintiff's predecessor in interest, as well as claims of RTC. However, by letter dated June 22, 1992, RTC stated that it would continue to hold defendant liable under the Note.

As noted above, on April 9, 1993, RTC, as receiver, assigned all its right, title, and interest in the defendant's mortgage to the Plaintiff, Bruin Holdings, Inc., which was recorded October 31, 1994. On September 14, 1993, plaintiff notified defendant of the assignment and, additionally, demanded payment in full. The defendant informed the plaintiff by letter dated October 1, 1993 of the action and settlement against Lands Edge and suggested that plaintiff look to Lands Edge for payment of the note.

The plaintiff notified the defendant that it would institute legal proceedings by letter dated November 4, 1993, and on May 31, 1994, gave notice of intention to foreclose. Next, by letter date November 14, 1994, plaintiff requested Lands Edge to make payment due under the Note as agreed to by the settlement between defendant and Lands Edge.

On March 8, 1995, this action was originally filed in the Court of Common Pleas of Montgomery County, Pennsylvania by the plaintiff, Bruin Holdings, Inc. The case was then transferred to the Court of Common Pleas of Monroe County, Pennsylvania by court order dated October 27, 1995. The defendant filed an answer to the complaint on December 6, 1995 and on December 12, 1995, removed the action to this court pursuant to 28 U.S.C. § 1441.

By Order dated April 25, 1996, Magistrate Judge Durkin directed the parties to file any motion raising the statute of limitations issue by May 8, 1996. On May 20, 1996, the defendant filed a motion for summary judgment with a concise statement of material facts and exhibits. A brief in support of the motion was submitted on May 30, 1996. The plaintiff filed a brief in opposition with appendix on June 17, 1996, together with a response to the defendant's concise statement of facts. A reply brief was filed by the defendant on July 1, 1996. On September 30, 1996, the plaintiff filed a supplemental brief in opposition to defendant's motion for summary judgment. The defendant submitted a reply to the plaintiff's supplemental brief on October 21, 1996.

On October 30, 1996 the plaintiff filed a motion for summary judgment and a brief in support was submitted on November 11, 1996. A Report and Recommendation was issued on November 15, 1996 recommending

that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be dismissed as moot. The plaintiff submitted objections on November 27, 1996 and on December 6, 1996, defendant filed a response to the plaintiff's objections. Plaintiff forwarded a letter to the court on December 16, 1996, containing further case authority in support of its position. For the reasons that follow, the court will not adopt the Magistrate Judge's report.

*Analysis*

■ When objections to a report and recommendation have been filed, under 28 U.S.C. 636(b)(1)(C), the court must make a *de novo* consideration of those portions of the report to which objections have been made. *See Sample v. Diecks,* 885 F.2d 1099, 1106 n. 3 (3d Cir.1989). In so doing, the court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Further, the court may, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984).

As stated above, both parties have filed motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); *see also Turner v. Schering–Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Young v. Quinlan,* 960 F.2d 351, 357 (3d Cir.1992). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the non-moving party 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'" *Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508 (3d Cir.1994). All inferences, however, " 'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." ' *Id.,* 24 F.3d at 512. *See also Betz Laboratories, Inc. v. Hines,* 647 F.2d 402 (3d Cir.1981).

■ "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, 'it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.'" *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.1992). A dispute is "genuine" only if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 243, 106 S.Ct. at 2507. "In sum, if the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Gabai,* 800 F.Supp. at 1154.

This court has conducted a careful *de novo* review of the record, including the plaintiff's objections to the Magistrate Judge's Report and the defendant's response to the plaintiff's objections. As noted, the Magistrate Judge's Report recommends that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be dismissed as moot. The plaintiff raises two objections to the Magistrate Judge's report and recommendation. First, plaintiff asserts that the Magistrate Judge incorrectly determined that the statute of limitations began to run on March 1, 1991. Lastly, the plaintiff contends that the Magistrate Judge's finding that the six-year statute of limitations provided in 12 U.S.C. § 1821(d)(14) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) is not available to the plaintiff, as assignee of the RTC, was erroneous.

Under the FIRREA, the date on which the statute of limitations begins to run on actions brought by the RTC, as conservator or receiver, is six years or the state statute of

limitations period, whichever is longer. 12 U.S.C. § 1821(d)(14). In Pennsylvania, an action upon a contract or note must be commenced within four years. 42 Pa.C.S.A. § 5525(7) and (8). Whether the extended statute of limitations under FIRREA can be applied to assignees of the RTC, has not been decided by the United States Court of Appeals for Third Circuit or a district court within the circuit.

Most federal courts that have decided the issue have determined that the extended statute of limitations of six years under FIR-REA applies to assignees of the RTC. *See Cadle Co. v. 1007 Joint Venture,* 82 F.3d 102 (5th Cir.1996); *United States v. Thornburg,* 82 F.3d 886 (9th Cir.1996); *FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993); *Mountain States Financial Resources Corp. v. Agrawal,* 777 F.Supp. 1550 (W.D.Okla.1991); *Remington Investments, Inc. v. Kadenacy,* 930 F.Supp. 446 (C.D.Cal.1996); *RTC Commercial Assets Trust v. Phoenix Bond and Indemnity Co.,* 943 F.Supp. 962 (N.D.Ill. 1996).[1] However, one federal court has held that the state statute of limitations is to be applied to assignees of RTC rather than the statute of limitations found in the FIRREA. *WAMCO, III, Ltd. v. First Piedmont Mortgage,* 856 F.Supp. 1076 (E.D.Va.1994).

In *WAMCO,* the United States District Court for the Eastern District of Virginia held that the six years statute of limitations contained in the FIRREA conferred a right personal to the RTC as receiver and was not transferable to assignees of the RTC. The court stated that the plain language of the FIRREA defined as personal to the RTC the limitations period and that the limitations period was only applicable to the RTC in its status as receiver. *WAMCO,* 856 F.Supp. at 1086. To support its holding, the court re-

lied on the common law principle that " 'an assignment ordinarily carries with it all rights, remedies and benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only.' " *WAMCO,* 856 F.Supp. at 1086 (quoting 6A C.J.S. Assignments § 76 (1975)). The court concluded that this common law principle "would apply with even greater force where the limitation is imposed by statute and where, as here, the statute makes clear that the incidental right, remedy or benefit is in fact personal in nature and for the benefit of the assignor when acting in a certain capacity." *WAMCO,* 856 F.Supp. at 1086.

In finding that the extended statute of limitations period provided for in the FIRREA did not apply to this case, the Magistrate Judge relied solely on the *WAMCO* decision. The Magistrate Judge stated that "the court should accept the *WAMCO* decision and find that the construction of § 1821(d)(14) does not permit a private assignee of the FDIC to benefit,from the six-year statute of limitations available to FDIC." Document 19, page 17, of the record.

In support of his contention that the Magistrate Judge's finding that the six-year statute of limitations provided in the FIRREA does not apply to the plaintiff, as assignee of the RTC, was erroneous, the plaintiff relies mainly on the decision in *Bledsoe.* In *Bledsoe,* the United States Court of Appeals for the Fifth Circuit held that assignees obtain the benefit of the longer federal statute of limitations observing that, although the statute is silent on whether an assignee obtains the benefits of the extended statute of limitations, "the common law speaks in a loud and consistent voice: An assignee stands in the shoes of his assignor." *Bledsoe,* 989 F.2d at

---

**1.** In addition, every state court that has addressed this issue has found that the statute of limitations contained in FIRREA applies to assignees of RTC. *See White v. Moriarty,* 15 Cal. App.4th 1290, 19 Cal.Rptr.2d 200 (1993); *Tivoli Ventures, Inc. v. Tallman,* 870 P.2d 1244 (Colo. 1994); *Cadle Company II, Inc. v. Stamm,* 633 So.2d 45 (Fla.Dist.Ct.App.1994); *Twenty First Century Recovery, Ltd. v. Mase,* 279 Ill.App.3d 660, 216 Ill.Dec. 513, 665 N.E.2d 573 (1996); *Cadle Company II, Inc. v. Lewis,* 254 Kan. 158, 864 P.2d 718 (1993), *cert. denied,* 511 U.S. 1053,

114 S.Ct. 1613, 128 L.Ed.2d 340 (1994); *N.S.Q. Associates v. Beychok,* 659 So.2d 729 (La.1995); *Central States Resources v. First National Bank,* 243 Neb. 538, 501 N.W.2d 271 (1993); *Investment Co. of the Southwest v. Reese,* 117 N.M. 655, 875 P.2d 1086 (1994); *SMS Financial L.L.C. v. Ragland,* 918 P.2d 400 (Okla.Ct.App.1995), *cert. denied,* Okla. (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 190, 136 L.Ed.2d 127 (1996); *Jackson v. Thweatt,* 883 S.W.2d 171 (Tex.1994); *Union Recovery Limited Partnership v. Horton,* 252 Va. 418, 477 S.E.2d 521 (1996).

810. Further, the court stated that allowing an assignee to rely upon the extended statute of limitations is also consistent with public policy because it allows the FDIC to comply more readily with its federally mandated responsibility to dispose of the assets of failed savings institutions. *Id.* at 810–11. Relegating an assignee to a shorter state statute of limitations would run counter to that purpose, the court reasoned, because it would require the FDIC to hold and assert all claims in which the state statute of limitations had run. *Id.* at 811.

The United States Court of Appeals for the Fifth Circuit recently returned to this issue and reevaluated the rationale for its decision in *Bledsoe*. *Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102 (5th Cir.1996). In *Cadle Co.*, the court narrowed its holding in *Bledsoe* and held that the extended statute of limitations provided in the FIRREA is applicable to actions brought by assignees only when the note is in default either before the FDIC acquires it or while the FDIC owns it. *Cadle Co.*, 82 F.3d at 105. Because the note was not in default when the FDIC transferred it, the court would not extend to the assignee the extended statute of limitations. *Id.* The court reasoned that the public policy concerns expressed in *Bledsoe* (FDIC responsibility to dispose of the assets of failed savings institutions), is "less salient" when default occurs after the FDIC assigns the Note. *Cadle Co.*, 82 F.3d at 105. Additionally, the court stated that the concern over marketability is most clear when the Note while held by the FDIC is in default, "since such a note has no value to a prospective transferee whose claim on it would be time-barred under state law." *Id.*

■ In his response to the plaintiff's objections, defendant reiterates the arguments contained in his brief in opposition and reply to plaintiff's supplemental brief. In particular, he relies on the *WAMCO* decision that states the right is personal to the RTC and, therefore, not assignable. However, rights personal to the RTC are those which constitute accrued causes of action that may be asserted independently of ownership of the property. The extended statute of limitations does not create a right personal to the RTC because it confers no benefit independent of the asset to which it relates.

Upon considering the views of the Federal courts addressing this issue and upon reviewing the authorities cited by the parties, the court declines to follow the Magistrate Judge's urging that the decision in *WAMCO* be followed and concludes that extending the statute of limitations to assignees accords with the clear legislative purposes of the FIRREA. Especially, as is the case here, extending the longer federal statute of limitations to purchasers of notes in default enhances the marketability of those assets by permitting purchasers a longer time to bring suit for recovery of amounts due on nonperforming notes.[2] Application of a shorter statute of limitations would lessen the value of the notes and, therefore, diminish or eliminate the market for assets of failed institutions.

■ In addition to objecting to the Magistrate Judge's finding that the extended statute of limitations under the FIRREA does not apply to this action, the plaintiff objected to the Magistrate Judge's determination as to when the statute began to run. Because this court has determined that the six-year statute of limitations contained in the FIRREA applies in this case, the plaintiff's objection is moot. The case was filed on March 8, 1995. Clearly, there is no statute of limitations problem in this case. In March of 1989, the defendant was still making payments on the notes and the land was not yet discovered to be unbuildable.

Aside from the statute of limitations issue, the defendant claims the plaintiff's action is barred based on various other theories. First, the defendant asserts that the plaintiff's claim is barred by the doctrine of laches. Second, defendant contends that plaintiff's predecessor in interest agreed to a novation in which Land Edge would per-

**2.** The note and mortgage were assigned to plaintiff on April 9, 1993, after the note was in default. Defendant admits that he was in default as of March, 1990, and possibly as early as November, 1989. Thus, the assignment was of a note already in default while RTC owned it which fits within the *Cadle Co.* rationale.

form under the note. Third, the defendant alleges that the plaintiff has waived and/or is estopped from asserting his rights. Because these issues where not fully briefed, this court will not make a determination as to whether they are valid. The defendant may raise them in a subsequent motion for summary judgment if he so desires.

Finally, in view of the disposition of defendant's motion, plaintiff's previously filed motion for summary judgment is not moot and should be addressed on remand.

ACCORDINGLY, this 31st day of December, 1996, IT IS HEREBY ORDERED THAT:

(1) The Report and Recommendation of United States Magistrate Judge Raymond J. Durkin is NOT ADOPTED.

(2) The defendant's motion for summary judgment (Doc. 9) is DENIED.

(3) The Clerk of Court is directed to remand this case to Magistrate Judge Raymond J. Durkin for further proceedings consistent with this Memorandum and Order.