1998 ND 53

**GLOBAL FINANCIAL SERVICES, INC., as assignee for Midwest Federal Savings Bank, Plaintiff and Appellant,**

v.

**Michael DUTTENHEFNER, Defendant and Appellee.**

**Civil No. 970215**

Supreme Court of North Dakota.

March 5, 1998.

Dean F. Bard (argued), Mandan, and Richard G. Hurdelbrink (on brief), of Hurdelbrink Law Firm, Mandan, for plaintiff and appellant.

Patrick A. Donovan (argued), of Richardson, Lange & Donovan, Hazen, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Global Financial Services, Inc. (Global) appealed a summary judgment dismissing its action to collect $5,786.56 from Michael Duttenhefner for the balance due on an installment loan. We conclude Global's action is not barred by the state statute of limitations. We reverse the summary judgment and remand for trial.

[¶ 2] On August 6, 1988, Duttenhefner entered into a retail installment contract with Dan Porter Motors, Inc. to finance the purchase of a car. Porter assigned the contract to Midwest Federal Savings Bank of Minot. After making nine of the monthly installment payments, Duttenhefner defaulted and returned the car to Midwest on September 7, 1989. On October 26, 1989, Midwest sold the car but received less than the debt owed by Duttenhefner.

[¶ 3] On September 21, 1990, Resolution Trust Corporation (RTC) was appointed receiver for Midwest. On January 1, 1991, Global purchased a number of notes from RTC, including the Duttenhefner installment contract. On September 3, 1996, Global sued Duttenhefner for the deficiency on the installment contract.

[¶ 4] Both litigants moved for summary judgment. Duttenhefner argued Global's action was barred because the state six-year statute of limitations in NDCC 28–01–16(1) governs and the claim accrued at least by September 7, 1989, when Midwest could have sued for breach of the installment contract. Global argued its action is not barred because the federal six-year statute of limitations, applicable to RTC under 12 U.S.C. 1441a(b)(4)(A) and 1821(d)(14), governs and this suit was brought within six years from the date RTC was appointed receiver. The trial court agreed with Duttenhefner and dismissed Global's action. Global appealed.

[¶ 5] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Ohio Farmers Ins. Co. v. Dakota Agency*, 551 N.W.2d 564, 565 (N.D. 1996). As *Jensen v. North Dakota Workers Comp. Bureau*, 1997 ND 107, ¶ 9, 563 N.W.2d 112, explained, interpretation of a statute presents a question of law fully reviewable by this Court.

[¶ 6] Congress enacted the federal statute of limitations relevant here as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. 101–73, 103 Stat. 183 (1989). The relevant part of the statute, 12 U.S.C. 1821(d)(14), says:

*(14) Statute of limitations for actions brought by conservator or receiver*

*(A) In general*

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

*(i)* in the case of any contract claim, the longer of—

*(I)* the 6–year period beginning on the date the claim accrues; or

*(II)* the period applicable under State law;

\*     \*     \*     \*     \*     \*

*(B) Determination of the date on which a claim accrues*

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

*(i)* the date of the appointment of the Corporation as conservator or receiver; or

*(ii)* the date on which the cause of action accrues.

Although the statute refers to claims by "the Corporation," defined in FIRREA as the Federal Deposit Insurance Corporation

(FDIC), 12 U.S.C. 1441a(b)(4)(A) makes this statute of limitations applicable also to RTC.

[¶ 7] Although NDCC 28–01–16(1), like the federal statute of limitations, sets a six-year limitation for bringing an action, the difference between the statutes lies in when the claim accrues. Under the federal statute, the limitation period is extended beyond the six years allowed under state law because the six years begin to run when RTC became receiver. In this case, if the state statute governs, Global's action was barred. Conversely, if the federal statute governs, Global's action was timely.

[¶ 8] FIRREA does not expressly say whether an assignee of FDIC or RTC acquires the right to rely on the federal statute of limitations. However, a body of caselaw has developed on this question. Although the vast majority of the cases have concluded an assignee does acquire the right to rely on the federal statute of limitations, the reasoning used to reach that conclusion has varied.

[¶ 9] Most of the cases that have applied the federal statute of limitations used federal common law rules of assignment and a public policy favoring the broadest possible market for the assets of failed banks and federally insured depository institutions. Use of federal common law stems from Justice Jackson's concurrence in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 468, 62 S.Ct. 676, 684, 86 L.Ed. 956 (1942) (Jackson, J., concurring), where he suggested courts use common law principles to fill inevitable statutory gaps: "we may make our own law from materials found in common-law sources." Because the Restatement (Second) of Contracts § 336 (1981) embraced the common law principle that an assignee stands in the shoes of the assignor, courts have reasoned this principle, combined with public policy, justifies extending the benefit of the federal statute of limitations to assignees. *See FDIC v. Bledsoe*, 989 F.2d 805, 809–11 (5th Cir.1993); *Mountain States Financial Resources v. Agrawal*, 777 F.Supp. 1550, 1552–53 (W.D.Okl.1991); *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244, 1248–49 (Colo.1994); *Twenty First Century Recovery, Ltd. v. Mase*, 279 Ill. App.3d 660, 216 Ill.Dec. 513, 516–18, 665 N.E.2d 573, 576–78 (1996); *Cadle Co. II, Inc.*

*v. Lewis*, 254 Kan. 158, 864 P.2d 718, 720–24 (1993), *cert. denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994); *Central States Resources v. First Nat.*, 243 Neb. 538, 501 N.W.2d 271, 277–78 (1993); *Investment Co. of the Southwest v. Reese*, 117 N.M. 655, 875 P.2d 1086, 1089–95 (1994); *National Enterprises, Inc. v. Caccia*, 172 Misc.2d 857, 662 N.Y.S.2d 164, 165 (Sup.App.1997); *Jon Luce Builder, Inc. v. First Gibraltar Bank*, 849 S.W.2d 451, 453–55 (Tex.Ct.App.1993). This extensive line of precedents holds the extended federal limitation benefits assignees of FDIC and RTC.

[¶ 10] One notable decision rejects that reasoning. In *WAMCO, III, Ltd. v. First Piedmont Mortg.*, 856 F.Supp. 1076 (E.D.Va. 1994), the court held an assignee could not use the federal statute of limitations because it conferred a right personal to RTC that was not transferable to RTC's assignee. The court reasoned the plain language of the statute made the limitations period applicable only to RTC in its status as a receiver, thus defining the right as "personal" to RTC. *WAMCO*, 856 F.Supp. at 1086. The court further relied on what it described as the "fundamental circumscribing principle" of the common law of assignment that " 'an assignment ordinarily carries with it all rights, remedies and benefits which are incidental to the thing assigned, except those which are personal to the assignor and for his benefit only.' " *WAMCO* (quoting 6A C.J.S. *Assignments* § 76 (1975)). The court opined that this principle "would apply with even greater force where the limitation is imposed by statute and where, as here, the statute makes clear that the incidental right, remedy or benefit is in fact personal in nature and for the benefit of the assignor when acting in a certain capacity." *WAMCO*. The *WAMCO* reasoning has generally been rejected by the courts that have considered its view.

[¶ 11] Recently, the United States Supreme Court decided a different case with an opinion that raises serious questions about the usual reasoning in the assignee-benefits line of decisions. In *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the FDIC, as receiver, sued a law firm that had been counsel to a

failed California savings and loan association, asserting malpractice and breach of fiduciary duties. The law firm raised a defense under California law that the knowledge of the bank's officers was imputed to the bank, and thus to the FDIC, thereby estopping the FDIC from recovery because it stood in the shoes of the failed bank. The FDIC argued FIRREA required the development of federal common law for the issue and similar ones because of the important federal interest in regulating financial institutions. A unanimous Supreme Court flatly rejected this argument.

[¶ 12] "'There is no federal general common law,'" the Court declared. *O'Melveny*, 512 U.S. at 83, 114 S.Ct. at 2053 (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). The Court pointed out cases needing federal rules of decision are "'few and restricted,'" and courts should create federal rules only "where there is a 'significant conflict between some federal policy or interest and the use of state law.'" *O'Melveny*, 512 U.S. at 86, 114 S.Ct. at 2055 (internal citations omitted). The Court held the desire for uniformity of law, the possible depletion of the deposit insurance fund, or disservice to the federal insurance program were unsatisfactory reasons to create a federal rule of decision in that case. According to the Court, the proper law to decide the question raised by the *O'Melveny* defense was the law of California.

[¶ 13] Thus, *O'Melveny* overruled Justice Jackson's suggestion in *D'Oench, Duhme* that courts make free use of federal common law to fill federal statutory gaps. Instead, *O'Melveny* indicates the *D'Oench, Duhme* case is an isolated instance of the "few and restricted" cases that may use federal common law rules of decision.

[¶ 14] Since *O'Melveny*, several courts have used it to decide whether an assignee of RTC can benefit from the federal statute of limitations. For example, in *Federal Financial Co. v. Hall*, 108 F.3d 46 (4th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997), the Fourth Circuit Court of Appeals followed *O'Melveny* and held Virginia state law governed whether an assignee of the RTC could use the federal statute of

limitations. In light of the Supreme Court's decision in *O'Melveny*, the court found no longer persuasive the positions of the *Bledsoe* court and its progeny that analogize to *D'Oench, Duhme* and to concepts of federal common law to interpret the statute. The court saw no "significant conflict" between a federal policy to maintain the value and marketability of RTC's asset pool and state laws, reasoning the *O'Melveny* court "found strikingly similar fears did not merit a federal common law rule of decision." *Hall*, 108 F.3d at 49. Looking to state law to resolve the statute of limitations question, the Fourth Circuit recognized the Virginia Supreme Court had recently decided the precise question in *Union Recovery Ltd. Partnership v. Horton*, 252 Va. 418, 477 S.E.2d 521 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1430, 137 L.Ed.2d 539 (1997), by ruling assignees of RTC do receive the benefit of the statute of limitations in 12 U.S.C. 1821(d)(14). The *Hall* court cautioned, however:

> [I]n this case, state law happens to bring us by a different path to the same result that the *Bledsoe* cases reach through application of federal common law. But this may not always be so and when state and federal law diverge, we believe we must follow state law, unless and until Congress or the Supreme Court directs otherwise.

*Hall*, 108 F.3d at 50. *See also Remington Investments, Inc. v. Kadenacy*, 930 F.Supp. 446, 450–51 (C.D.Cal.1996) (applied *O'Melveny* and state law, and concluded the California Court of Appeal had ruled FDIC's assignees were entitled to the benefit of the federal statute of limitations).

[¶ 15] The Washington Court of Appeals reached the same result by applying *O'Melveny* and state law in *Federal Financial Co. v. Gerard*, 89 Wash.App. 445, 949 P.2d 412 (1998). The court recognized that use of a uniform federal common law would promote the underlying purposes of FIRREA, but reasoned "this argument is indistinguishable from that rejected in *O'Melveny*. In short, promotion of a purpose of FIRREA does not alone justify the choice of federal law to decide the question of what statute of limitations should apply in this case. Rather, state

law applies." *Gerard*, 949 P.2d at 415. The court rejected the debtor's argument that use of Washington law necessarily meant the state statute of limitations applied. Instead, the Washington court concluded the federal statute of limitations applied from the state's adoption of the Uniform Commercial Code that codified the rights of an assignee of a note, and from Washington's common law on assignability of contract rights.

[¶ 16] The court relied on RCW 62A.3–203(b) that declares "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument," and concluded the unambiguous language of the statute made the assignment of a note by FDIC carry with it the right to enforce the instrument, including the right to use the assignor's extended federal statute of limitations.

[¶ 17] Explaining Washington's common law on the assignability of contract rights, the *Gerard* court said:

> Generally, such rights may be freely assigned unless forbidden by statute or rendered ineffective for public policy reasons. An assignee of a contract "steps into the shoes of the assignor, and has all of the rights of the assignor." And the assigned rights include not only those identified in the contract, but also applicable statutory rights.

949 P.2d at 415–16 (footnotes omitted). The *Gerard* court at 417 (footnote omitted) also rejected the contention the FIRREA statute of limitations was "personal" to FDIC and nonassignable, concluding "[b]ecause the FDIC's ability to seek a remedy within the FIRREA limitations period is integrally tied to its possession of the instrument, it is among the 'rights, remedies and benefits which are incidental to the thing assigned' and not only a right 'personal to the assignor and for [its] benefit only.'"

[¶ 18] We agree with the interpretation of the *Hall* and *Gerard* courts about the impact of *O'Melveny* on the question whether an assignee of RTC is entitled to the benefit of the federal statute of limitations. Accordingly, we look to our state law to decide the question in this case.

[¶ 19] We need go no further than the North Dakota law of assignment for the answer. The common law of assignment remains in effect in North Dakota despite this state's adoption of the Uniform Commercial Code. *Willow City v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762, 767 (N.D.1978). *See also* NDCC 41–01–03 (UCC 1–103). This Court has often said an assignee acquires no greater rights than those of the assignor, and simply stands in the shoes of the assignor. *See First National Bank, Bismarck v. O'Callaghan*, 143 N.W.2d 104, 106 (N.D.1966); *C.I.T. Corporation v. Hetland*, 143 N.W.2d 94, 98 (N.D.1966). *See also* NDCC 41–03–22(2) (UCC 3–203) ("Transfer of an instrument, regardless of whether the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, . . .").

[¶ 20] We have held an assignee of a chose in action takes subject to any defenses existing at the time of the assignment or before notice of the assignment. *See Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 296 (N.D.1979); *Farmers Ins. Exchange v. Arlt*, 61 N.W.2d 429, 437 (N.D.1953). We have also held the assignment of an instrument vests in the transferee the same rights the transferor had in it. *Albrecht v. Walter*, 1997 ND 238, ¶ 11, 572 N.W.2d 809; *First National Bank of Minot v. MacDonald Const. Co.*, 137 N.W.2d 667, 672 (N.D.1965). *See also Industrial Indem. Co. v. Anderson*, 697 F.Supp. 1532, 1535 (D.N.D.1988). We have recognized some rights are personal in character and may not be assignable. *See Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 128 (N.D.1990) (right to sue for rescission). While we have not decided specifically whether the benefit of a statute of limitations is assignable, as *Burr v. Kulas*, 1997 ND 98, ¶ 12, 564 N.W.2d 631, indicates, we have a general policy of selecting the longer statute of limitations when there is a reasonable dispute over which statute applies.

[¶ 21] Duttenhefner relies on *WAMCO* for the proposition the federal statute of limitations is personal in character and incapable of assignment. We reject *WAMCO* for the

same reasons other courts have rejected its reasoning. For its conclusion the statute of limitations is personal in nature, the court in *WAMCO*, 856 F.Supp. at 1086, quotes from 6A C.J.S. *Assignments* § 76, at p. 719 (1975) (emphasis added): "Unless a contrary intention is manifest or inferable, an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned, *except those which are personal to the assignor and for his benefit only.*" But as the Texas Supreme Court accurately explained in *Jackson v. Thweatt*, 883 S.W.2d 171, 176 (Tex.), *cert. denied*, 513 U.S. 872, 115 S.Ct. 196, 130 L.Ed.2d 127 (1994):

> An examination of the cases cited in Corpus Juris Secundum in support of the quoted rule, however, reveals that rights "personal" to the assignor are those which, although relating to the property assigned, constitute accrued causes of action that may be asserted independently of ownership of the property. *See Breidecker v. General Chem. Co.*, 47 F.2d 52 (7th Cir. 1931) (conveyance of land held not to constitute an assignment of the grantor's cause of action for damages previously sustained for trespass upon the land conveyed); *Huston v. Ohio & Colorado Smelting & Ref. Co.*, 63 Colo. 152, 165 P. 251 (1917) (assignment of stock held not to transfer assignor's cause of action for fraud in connection with the stock's purchase). The extended limitations period afforded by FIRREA, which confers no benefit independent of the asset to which it relates, does not fall into this category.

*See also Bruin Holdings, Inc. v. Moderski*, 960 F.Supp. 62, 67 (M.D.Pa.1996); *Gerard*, 949 P.2d at 416–17. We believe RTC's right to sue within the time allowed by the federal statute of limitations was inherent in possession of the instruments it held and was among the rights, remedies and benefits that are incidental to the thing assigned. It was not a personal right incapable of assignment.

[¶ 22] Under the North Dakota law of assignment, we conclude Global acquired the right to rely on the extended federal statute of limitations, 12 U.S.C. 1821(d)(14), in bringing this collection action against Duttenhefner. Because the federal statute of limita-

tions applies under state law, Global's action is not barred.

[¶ 23] The summary judgment is reversed and the case is remanded for trial.

[¶ 24] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.