USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1285

 LIONEL R. BOLDUC and MAUREEN C. BOLDUC,

 Plaintiffs, Appellees,

 v.

 BEAL BANK, SSB,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. James R. Muirhead, U.S. Magistrate Judge]

 Before

 Boudin, Lynch and Lipez,
 
 Circuit Judges.
 
 

 Jamie N. Hage with whom Eric Edward Nord and Peabody & Brownwere on brief for appellant.
 Michael C. McLaughlin with whom Law Offices of Michael C.
McLaughlin was on brief for appellees.

January 22, 1999

 
 

 BOUDIN, Circuit Judge. Beal Bank, SSB, a Texas
institution, holds second mortgages on two New Hampshire properties
owned by Lionel and Maureen Bolduc. Following the Bolducs'
default, Beal Bank commenced foreclosure proceedings against the
properties. At the Bolducs' behest, the district court granted a
preliminary injunction against Beal Bank barring foreclosure based
on an alleged violation of the Equal Credit Opportunity Act, 15
U.S.C. 1691 et seq. ("ECOA"), and the equitable doctrine of
mutual mistake. Beal Bank appeals.
 The litigation arose out of two related transactions. 
The first occurred in 1987 when Lionel Bolduc obtained two loans
from a now-defunct New Hampshire bank, BankEast, one for $360,000
and the other for $681,000. As collateral for the loans, Lionel
Bolduc offered commercial properties including condominiums in
Merrimack, New Hampshire, that he owned jointly with his wife,
Maureen Bolduc. Lionel Bolduc was the sole applicant for the
loans, and BankEast's commitment letter was addressed only to him. 
 At the closing, BankEast required Maureen Bolduc to co-
sign the notes as well as the mortgages. The couple was not
represented by counsel at the closing, and they were told by the
bank that requiring her signature was standard procedure. Although
the Bolducs were apparently business partners and had extensive
real estate interests, BankEast's insistence that Maureen Bolduc
co-sign the notes may have violated ECOA's bar on discrimination
based on marital status. See 15 U.S.C. 1691(a)(1); 12 C.F.R. 
202.7(d)(1) (1998).
 By 1991, the Bolducs were unable to meet the repayment
schedule on the 1987 loans, and on April 17, 1991, they entered
into the second transaction--a forbearance agreement with BankEast. 
The agreement maintained the 1987 notes and mortgages, partly
forgave interest due and extended the payment deadline, added a
small line of credit (never used) in favor of the Bolducs, and
accepted the Bolducs' guarantee of a loan to a third party seeking
to buy several of the Bolducs' condominiums. As security for these
new extensions of credit and as additional security for the 1987
loans, the Bolducs granted BankEast blanket second mortgages on
their home in Hudson, New Hampshire, owned solely by Maureen
Bolduc, and on an undeveloped 90-acre parcel of land held by the
couple jointly ("the Merrimack land").
 BankEast failed in 1991, and the FDIC was appointed
receiver, acquiring the Bolducs' notes and mortgages. Thereafter,
the Bolducs defaulted on their payment obligation, and the FDIC
foreclosed its first mortgages on the condominiums and related
properties originally given as security in 1987. However, the FDIC
did not foreclose on the second mortgages secured by the Hudson
home and the Merrimack land even though the proceeds from the
original collateral were not enough to satisfy the balance due on
the 1987 notes, as amended in 1991.
 In December 1995, the FDIC sold the notes and the second
mortgages to the Loan Acceptance Corporation, a wholly owned
subsidiary of Beal Bank. Beal Bank subsequently acquired the loans
and second mortgages itself and soon thereafter sought to foreclose
on the second mortgages. The mortgages contained a statutory
"power of sale" provision permitting Beal Bank to begin foreclosure
proceedings without court involvement. See N.H. Rev. Stat. Ann. 
477:29 (1997). The Bolducs then sued Beal Bank in federal district
court to enjoin the foreclosure of the Hudson home and the
Merrimack land; and the parties agreed to disposition by a
magistrate judge under 28 U.S.C. 636(c).
 In February 1998, the magistrate judge granted a
preliminary injunction, forbidding Beal Bank from foreclosing on
either the Hudson house or the Merrimack land pending a trial on
the merits; he enjoined the Bolducs pendente lite to maintain the
properties and not to encumber them. A detailed opinion, issued on
February 3, 1998, set forth the magistrate judge's reasoning. Beal
Bank now appeals from that preliminary injunction, which we review
under the customary standards. See Ross-Simons of Warwick, Inc. v.
Baccarat, Inc., 102 F.3d 12, 15-16 (1st Cir. 1996).
 The district court had before it a substantial number of
different claims urged by the Bolducs, but it rested the injunction
on a limited set of rulings. It found that the Bolducs had a
likelihood of prevailing at trial on their claim that Maureen
Bolduc's signature on the 1987 notes had been secured in violation
of ECOA. The court further found a likelihood of the Bolducs'
establishing that the 1991 agreement, which gave rise to the second
mortgages, had been tainted by mutual mistake, i.e., the parties'
belief that a valid claim existed against Maureen Bolduc on the
1987 notes. Finally, the court found that an injunction was
consistent with the equities and the public interest.
 On this appeal, Beal Bank begins with certain threshold
objections that it advanced below but that the district court
rejected or bypassed. Beal Bank argues that the Bolducs failed to
exhaust their administrative remedies under the Federal
Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. 
1821(d) ("FIRREA"); that their suit is barred by the ECOA statute
of limitations; that it is barred by the D'Oench, Duhme doctrine
and its statutory counterpart; and that the suit is premature
because Beal Bank has not yet sought to collect directly against
Lionel and Maureen on the promissory notes. We start with these
objections.
 The first objection is that the Bolducs' challenge to the
second mortgages is barred because the Bolducs did not pursue it
through administrative channels when the FDIC took over BankEast. 
Under FIRREA, the failure to seek such remedies precludes a court
from entertaining "any claim or action for payment from, or any
action seeking a determination of rights with respect to, the
assets" of any bank for which the FDIC has been made receiver. 12
U.S.C. 1821(d)(13)(D). Beal Bank, needless to say, asserts that
the Bolducs are now trying to pursue an action seeking to nullify
assets secured from the FDIC, namely, the second mortgages.
 At the outset, the Bolducs might have argued, but did
not, that the second mortgages, having been transferred to Beal
Bank, no longer constitute assets of a bank for which the FDIC has
been made receiver. Beal Bank might then have argued in response
that a larger purpose of the exhaustion requirement is to clear
title to the failed bank's remaining assets so that the latter can
be mustered or sold. If so, perhaps the assets when transferred to
a third party by the receiver should be free of any claims that
should have been, but were not, asserted through the administrative
process.
 Our unaided search revealed no case law on this
interesting question. Some precedent gives transferee banks who
acquire from the receiver claims against third parties the benefit
of the long statute of limitations that the FDIC itself would enjoy
in pursuing such claims. See, e.g., Cadle Co. v. 1007 Joint
Venture, 82 F.3d 102, 105-06 (5th Cir. 1996); Bruin Holdings, Inc.v. Moderski, 960 F. Supp. 62, 67 (M.D. Pa. 1996). And some of the
arguments made for this result might be applied by analogy in favor
of Beal Bank. But since the Bolducs have not argued that the
transfer to Beal Bank has any significance, we proceed on this
issue as if the FDIC still held the second mortgages and the
Bolducs were suing to enjoin their threatened foreclosure.
 Even with this assumption, the issue is difficult. By
its terms, the FIRREA exhaustion requirement applies to claims
against the bank and not to claims by the bank against those
indebted to it. As four circuit courts have held, such debtors are
entitled to await an attempt by the receiver to collect and then
assert any available defenses to collection in court; the debtors
need not submit their defenses to the administrative process. 
Although the Bolducs are the plaintiffs here, they say that their
action to enjoin the foreclosure is merely an effort to assert the
defense preemptively and not to recover money or property from the
bank.
 We agree that who happens to be the plaintiff is not
controlling. The purpose of the exhaustion requirement is to make
persons with claims against bank funds or property submit them
promptly in a single administrative forum. One alleged merely to
owe the bank money is not in this class, whether the debtor asks a
court for a preemptive declaration or injunction against the bank
claim or merely awaits suit by the bank and then defends. Cf.Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28 (3d
Cir. 1995), qualified by Algrant v. Evergreen Valley Nurseries,
L.P., 126 F.3d 178 (3d Cir. 1997).
 The difficulty is that the mortgages in this case have a
double aspect. From one standpoint, they are potential claims by
the bank to recover (out of specific property of the Bolducs) debts
owed to the bank by the Bolducs; to this extent, the exhaustion
requirement does not apply. But from another angle, a successful
injunction suit by the Bolducs could be viewed as cutting off the
bank's rights to property currently in the bank's possession,
namely, a contingent property interest represented by the mortgages
themselves.
 In the end, we think that the Bolducs' suit does not
quite fit within the statutory language that delineates the
exhaustion requirement. It is not a claim by the Bolducs seeking
any kind of "payment" from any bank, 12 U.S.C. 1821(d)(13)(D);
and as no one disputes that Beal Bank owns the mortgages--the fight
is about the possible defenses to foreclosure--it is hard to
describe the Bolducs' action as one seeking "a determination of
rights with respect to" a bank asset, id. We therefore conclude
that FIRREA poses no bar to the Bolducs' argument on the merits.
 This brings us to Beal Bank's second threshold
objection: the Bolducs are asserting rights under ECOA long after
the two-year statute of limitations has run on bringing suits under
that act. See 15 U.S.C. 1691e(f). The magistrate judge agreed
that the ECOA violation occurred, if at all, in 1987 when Maureen
Bolduc signed notes for the original loan. But he relied on cases
holding that a wife, made to co-sign for or guarantee a loan to her
husband in violation of ECOA, may defend on that ground when a
collection suit on the loan is brought against her, even if the
suit comes more than two years after the signing.
 These cases have relied primarily on the common law
doctrine of recoupment, which allows a defendant to "defend"
against a claim by asserting--up to the amount of the claim--the
defendant's own claim against the plaintiff growing out of the same
transaction. See 6 Wright, Miller & Kane, Federal Practice and
Procedure 1401 (2d ed. 1990). Recoupment is allowed even where
the defendant's claim would be barred, if asserted in a separate
action, by the statute of limitations. This approach also
protects the ill-informed spouse where the bank happens or chooses
to wait more than two years before suing on the note.
 We agree that recoupment doctrine could allow Maureen
Bolduc to assert an ECOA defense against BankEast if it sued her to
collect on the 1987 notes and that the defense might be asserted
preemptively by Maureen Bolduc in certain circumstances. But the
present suit is not a challenge to the 1987 notes but rather to
mortgages issued in a second transaction that occurred in 1991 and
as to which no ECOA violation has been shown. Whether recoupment
doctrine extends to this latter case is open to serious dispute
since the ECOA violation was committed by someone not a party to
this case in the course of an earlier transaction.
 We need not resolve this interesting question. Given the
magistrate judge's own ground for relief--mutual mistake--the
action can be viewed as one arising under state law to enjoin
foreclosure of a state-law mortgage because of a contractual defect
recognized under state law. There is complete diversity between
the parties. Even if an independent federal action under ECOA were
barred as to the 1991 transaction, this would not preclude the
possibility of mutual mistake based on the unenforceability of the
1987 notes against Maureen Bolduc.
 This brings us to Beal Bank's remaining threshold
objections. Contrary to the bank's argument, the assertion of
mutual mistake does not involve reliance by the Bolducs on any
secret agreement between the lender and borrower barred by the
D'Oench, Duhme doctrine or the statutory embodiment of the
doctrine. See 12 U.S.C. 1823(e), 1821(d)(9)(A); D'Oench, Duhme
& Co. v. FDIC, 315 U.S. 447 (1942). The doctrine and statute are
only directed at protecting the FDIC from unrecorded or oral
agreements not in the insured bank's records; they do not preclude
every possible defense to a bank claim--e.g., that the loan was to
an underage borrower who lacked capacity to contract--merely
because it may depend on information that is not contained in bank
files.
 Further, we do not agree with the bank that the Bolducs'
action was "premature." Beal Bank does not deny that it was
seeking to foreclose and that it could commence such a foreclosure
without prior court proceedings under the so-called "power of sale"
provisions contained in the mortgages. Nor (as Beal Bank suggests)
is this independent action a premature assertion of an affirmative
defense under Fed. R. Civ. P. 8; the use of the term in the rule is
concerned with pleading sequence within a case and has nothing to
do with whether an affirmative defense can sometimes be asserted in
a preemptive action for declaratory or injunctive relief.
 At last we come to the central question whether a
"likelihood-of-success" showing adequately supported the
preliminary injunction. See Ross-Simons, 102 F.3d at 15. The
district court found such a likelihood based on a single theory: 
that a 1987 violation of ECOA gave rise to a mutual mistake in the
1991 agreement from which the mortgages now at issue sprang. We
confine ourselves to the theory relied on by the district court, no
other being pressed on this appeal as an alternative ground for the
preliminary injunction.
 The first step in the district court's reasoning--that
there likely was an ECOA violation in 1987--is supportable so far
as necessary for a preliminary injunction. If Lionel Bolduc sought
the loans himself and was creditworthy, it was arguably a violation
to insist that his wife also sign the notes. See 15 U.S.C. 1691
et. seq.; 12 C.F.R. 202.7(d). She could have been required to
sign off on mortgaging the property, since it was tendered by
Lionel Bolduc as security and was jointly held with his wife, but
Beal Bank has not shown that state law required Maureen to co-sign
the notes to make the security effective.
 However, Beal Bank is not proposing to collect personally
against Maureen Bolduc on the 1987 notes but to collect on second
mortgages given in 1991 to secure all of the Bolducs' debts, new
and old. As already noted, the magistrate judge bridged this gap
by concluding that the 1991 agreement was subject to avoidance on
grounds of mutual mistake. The magistrate judge posited that had 
Maureen Bolduc known that she was not liable on the 1987 notes, she
"would not have committed her home or her share in the Merrimack
property"; Lionel "may not have risked his share" in the latter;
and, "in short, the mistake induced the Bolducs to enter an
agreement that they would otherwise have refused."
 These findings are unsupported by evidence and, on the
record before us, highly doubtful. The 1991 forbearance agreement
is on its face a standard workout arrangement between bank and
debtor. It extended overdue loans, forgave or postponed interest,
and granted new credit--all as described above--in exchange for new
second mortgages. Maureen Bolduc, as well as her husband, had good
reason to favor the transaction regardless of her possible personal
liability on the 1987 notes (which were already at least partly
secured). Apart from a practical interest in her husband's
prosperity, she was a co-owner of mortgaged property--comprising
collateral for the 1987 notes--that would be forfeit absent a
workout.
 Under these circumstances, it is far from obvious that
Maureen Bolduc signed the agreement and second mortgages "because"
of a mistaken belief that she would be secondarily liable on the
1987 notes--a liability that itself was limited by the likelihood
that the BankEast would recover considerable value from the 1987
mortgaged property. It is even less probable that her husband's
consent to the second mortgage on the Merrimack property, a consent
required as a condition of a promising workout of his own
obligations, depended on the mistaken belief that his wife might
otherwise have to pay part of his own 1987 debt. 
 So far as we can tell from the record, the Bolducs
offered no evidence to support either of the magistrate judge's
conjectures in their favor. The Bolducs do not even appear to have
argued mutual mistake in the district court, contending instead
(quite wrongly) that the existence of a legal defense for Maureen
Bolduc to the 1987 notes created a "failure of consideration" for
the 1991 transaction. The magistrate judge was entitled to
consider mutual mistake on his own motion, but the lack of evidence
is easily understood and the need for supported findings remains. 
Absent more information or further explanation, the causation issue
is not yet one on which the Bolducs have been shown likely to
prevail.
 We have one other concern about the mutual mistake
doctrine. The magistrate judge supposed--subject to one
qualification--that mutual mistake rendered the 1991 agreement and
the second mortgages "void." That is not the law. In New
Hampshire, see Hillside Assoc. of Hollis, Inc. v. Maine Bonding &
Cas. Co., 605 A.2d 1026, 1029-30 (N.H. 1992), as elsewhere, see E.
Farnsworth, Contracts 9.3, at 685 (2d ed. 1990), a party may be
permitted to avoid a contract based on mutual mistake but only if
avoidance is just and reasonable--a judgment guided, if not in all
cases controlled, by certain preconditions and precedent, see id.
 In general, avoidance based on mutual mistake must not
unfairly prejudice the rights of an innocent third party, and Beal
Bank is a third party to the 1991 agreement, having acquired
BankEast's rights and the second mortgages from the FDIC. Whether
it is innocent is a difficult question. Addressing another issue,
the magistrate judge found that Beal Bank should have known of the
claimed ECOA violation when it acquired the mortgages from the
FDIC; a reader of the FDIC file would have uncovered a letter from
the Bolducs alerting the FDIC to their ECOA claims. Yet Beal Bank
does not directly address the issue and we pass it by.
 What Beal Bank does argue is that the lender side of the
contract has already been performed by the deferral of existing
claims under the 1987 contract, by forgiving in part past interest
due under that agreement, and by extending new credit used to
facilitate sales of Bolduc property to third parties. If partial
performance has occurred on one side, mutual mistake doctrine does
not mechanically cancel all remaining obligations on the other side
and thereby allow the nonperforming party simply to retain the
benefit conferred by the partial performance. See Restatement
(Second) of Contracts 158, comment b, 384 (1981). On the
contrary, the doctrine permits the court to grant relief only on
such terms "as justice requires." Id. 158, at 419.
 We need not resolve this concern because we conclude that
the injunction is flawed, as explained above, by inadequate support
for the finding that the putative mutual mistake "caused" the 1991
agreement and second mortgages. If on remand the district court
does find that this causal connection has been proved to a
sufficient likelihood to support a preliminary injunction--and the
finding would require evidence and not just assertion--the
magistrate judge can also consider the extent to which enjoining
the mortgage foreclosures would be compatible with justice in light
of partial performance of the 1991 agreement and whether the other
conditions for a preliminary injunction (equity, public interest)
are satisfied.
 This case gives every promise of producing more trial
work, and probably further appeals, relating to the effort to
enjoin the mortgages on ECOA grounds, not to speak of other
theories and other relief sought by the Bolducs. The parties might
therefore wish to consider whether there is any prospect of
settling the case without further litigation. Absent a settlement,
the present preliminary injunction may be continued in force for 60
days after the mandate issues but thereafter must be vacated
unless, by then, new findings sufficient to support it have been
made and a new order entered by the magistrate judge. See TEC
Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 546 (1st
Cir. 1996).
 The case is remanded for further proceedings consistent
with this opinion. Each side shall bear its own costs on this
appeal.