## BECKLEY CAPITAL LIMITED PARTNERSHIP, Plaintiff, Appellant,

v.

**Elizabeth Ann DiGERONIMO, Executrix of the Estate of Anthony L. DiGeronimo, Defendant, Appellee.**

**Elizabeth Ann DiGeronimo, Executrix of the Estate of Anthony L. DiGeronimo, Plaintiff, Appellant,**

v.

**Federal Deposit Insurance Corporation and Beckley Capital Limited Partnership, Defendants, Appellees.**

Nos. 96–2292, 98–1464.

United States Court of Appeals, First Circuit.

Argued June 11, 1999.

Decided July 19, 1999.

Thomas J. Pappas, with whom Stephanie A. Bray, Thomas W. Aylesworth and Wiggin & Nourie, P.A. were on brief for Elizabeth Ann DiGeronimo.

Frank P. Spinella, Jr. with whom Hall, Morse, Anderson, Miller & Spinella, P.C. was on brief for Beckley Capital Limited Partnership.

Ashley Doherty, Counsel, Federal Deposit Insurance Corporation, with whom Ann S. DuRoss, Assistant General Counsel, Colleen J. Boles, Senior Counsel, Ste-

ven A. Solomon and Bachus, Meyer, Solomon, Rood & Branch were on brief for Federal Deposit Insurance Corporation.

Before SELYA, BOUDIN and LIPEZ, Circuit Judges.

BOUDIN, Circuit Judge.

Before us are two appeals arising out of two different district court cases, which both stem from a single 1988 bank loan. On August 15, 1988, Biotech Realty Trust ("Biotech") obtained a loan from the Bank of New England–Worcester and executed a note in favor of the bank in the principal amount of $700,000. To secure the note, Biotech executed a mortgage in favor of the bank on a commercial building in Leominster, Massachusetts; and Anthony DiGeronimo, as did two other persons, executed a personal guaranty of Biotech's obligations under the note.

On January 6, 1991, the bank failed and the Federal Deposit Insurance Corporation ("FDIC") became its receiver. Thereafter, Biotech defaulted on the note, and RECOLL Management Corporation ("RECOLL"), which administered certain assets of the bank on behalf of the FDIC, began foreclosure proceedings in Massachusetts state court. On March 16, 1994, RECOLL agreed with Biotech and the guarantors that the building securing the note would be sold to a tenant, that the proceeds would be applied to reduce the outstanding balance on the note, and that the guarantors would be released if they made certain disclosures as to their own financial status.

Although the other guarantors apparently declined to make the required disclosures, Anthony DiGeronimo did make them. In addition, he contributed just over $10,000 to ensure that the net amount received by the FDIC on the sale of the

building to the tenant met the minimum figure that the FDIC had set as a condition of the overall transaction. Although RECOLL told Anthony DiGeronimo that a written release to him would be forthcoming, no such release was ever delivered.

After the March 1994 sale, a balance remained due on the note (apparently the balance was then about $195,000). On June 9, 1994, the FDIC sold the note and the guaranty to Beckley Capital Limited Partnership ("Beckley") as part of a package of assets that the FDIC had inherited as receiver of the bank. On July 23, 1994, Anthony DiGeronimo died, and his wife, Elizabeth Ann DiGeronimo, became executrix of the estate. New Hampshire requires that claims against an estate be filed in court within one year of decedent's death, N.H.Rev.Stat. Ann. § 556:5, and the one-year period ended without any suit being brought by Beckley against the estate of Anthony DiGeronimo on the guaranty.[1]

Nevertheless, after the expiration of the one-year deadline, Beckley sued Elizabeth as executrix of the DiGeronimo estate on April 11, 1996, on the ground that the estate remained liable under the guaranty for the outstanding balance on the note. When the estate asserted the one-year state statute of limitations (along with other defenses), Beckley argued that it was entitled to the much longer six-year statute of limitations available to the FDIC under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(14). In September 1996, the magistrate judge, acting under 28 U.S.C. § 636(C), concluded on cross-motions for summary judgment that Beckley was governed by the one-year statute and dismissed the case. *Beckley Capital L.P. v. DiGeronimo*, 942 F.Supp.

---

1. Elizabeth DiGeronimo also sought ancillary letters of administration in Massachusetts where certain of the estate property was located, and she was duly appointed executive there as well. Massachusetts has a largely similar one-year statute. Mass. Gen. L. Ann.

Ch. 197, § 9. For convenience, we refer only to the New Hampshire statute and also disregard its further requirement that notice of any claim be presented to the executrix within six months. N.H.Rev.Stat. Ann. § 556:5.

728 (D.N.H.1996). In No. 96–2292, Beckley appeals from that decision.

In March 1997, Elizabeth DiGeronimo brought a separate suit in the federal district court in New Hampshire, seeking specific performance against the FDIC, or in the alternative against Beckley, to require delivery of the release assertedly promised by RECOLL at the time of the March 16, 1994, transaction. Although this might seem redundant given the dismissal of Beckley's action, Beckley was not only appealing from that dismissal but also seeking in state court to obtain an equitable extension of the one-year deadline for suing the estate. N.H.Rev.Stat. Ann. § 556:28.

Both defendants moved for summary dismissal of the injunction action. In a decision filed on March 23, 1998, the district court dismissed the claim against the FDIC on the ground that it was barred by a different provision of FIRREA, 12 U.S.C. § 1821(d)(13)(D). The court also dismissed the estate's claim against Beckley on the ground that it was effectively a compulsory counterclaim that the estate should have asserted in the earlier lawsuit by Beckley to recover on the guaranty. *See* Fed.R.Civ.P. 13(a). The DiGeronimo estate appeals this decision in No. 98–1464.

We begin with Beckley's appeal in No. 96–2292 in which it contends that, as the FDIC's assignee, it is not bound by the state law requiring that suits against an estate be brought within one year. Congress enacted a special statute of limitations applying "with regard to any action brought by the [FDIC] as conservator or receiver." 12 U.S.C. § 1821(d)(14)(A). For contract claims, the FDIC has "the longer of (I) the 6–year period beginning on the date the claim accrues; or (II) the period applicable under State law." *Id.* § 1821(d)(14)(A)(i). Further, the statute

says that "a claim accrues" for purposes of subsection (A) on "the later of (i) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action accrues." *Id.* § 1821(d)(14)(B).

At first glance, one might think that Beckley's position is unaffected by this statute since the statute's plain language is directed to suits by the FDIC (and only in its capacity as a conservator or receiver), and Beckley's suit is not one by the FDIC. Nothing in the statute says that someone acquiring a contract right previously held by the FDIC should get the benefit of the FDIC's special statute of limitations, nor is there any indication that Congress considered the issue. Thus, neither the plain language of the statute nor any directly pertinent legislative history supports Beckley's position.

Nevertheless, a number of circuits, and some district and state courts as well, have held that one who purchases an obligation owned by the FDIC as conservator or receiver is entitled to take advantage of the special six-year statute of limitations,[2] and no circuit appears to directly hold to the contrary. *But cf. Federal Fin. Co. v. Hall,* 108 F.3d 46 (4th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997) (dictum). This outcome is usually made to rest on either or both of two propositions: the common law axiom that assignees "stand in the shoes" of assignors, *e.g., Bledsoe,* 989 F.2d at 810, and the federal policy interest in promoting the marketability of the FDIC's assets derived from failed banks, *e.g., id.* at 810–11.

The axiom is fairly weak support for the result. It is true that courts often say that assignees stand in the shoes of assignors and are thus entitled to whatever rights the assignor had vis-à-vis the transferred

---

2. *See, e.g., UMLIC–Nine Corp. v. Lipan Springs Dev. Corp.,* 168 F.3d 1173 n. 3 (10th Cir. 1999); *United States v. Thornburg,* 82 F.3d 886 (9th Cir.1996); *FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993); *Bruin Holdings, Inc. v.* *Moderski,* 960 F.Supp. 62 (M.D.Pa.1996); *see also Jackson v. Thweatt,* 883 S.W.2d 171 (Tex. 1994); *Cadle Co. v. Lewis,* 254 Kan. 158, 864 P.2d 718 (Kan.1993).

asset. *See* 6 Am.Jur.2d Assignments § 102 (collecting cases). But the proposition is too abstract and has too many exceptions to be very useful in a case like this one. Indeed, sometimes an assignee may get *more* than the assignor had, notably a good faith purchaser of a negotiable instrument, who may take free of certain defenses that could have been asserted against the assignor. *E.g.,* U.C.C. §§ 3–302, 3–305. And it is pretty easy to imagine procedural "rights" peculiar to an assignor that would not readily be transferrable to the assignee.[3]

The "stand in the shoes" axiom makes most sense when it is directed to defining the bundle of substantive rights that comprise the asset that has been transferred, *see, e.g., Newton v. Uniwest Fin. Corp.,* 967 F.2d 340, 347 (9th Cir.1992) (extending to FSLIC assignee the protections of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)), and it makes less sense (at least as an automatic principle) when one is concerned with advantages or disabilities that are peculiar to the status of either the assignor or the assignee. Such issues ought to be decided by the usual criteria (*e.g.,* statutory language, pertinent policy) rather than by shibboleths.

The policy arguments relied upon by a number of the courts that have given the assignee the benefit of the FDIC's statute of limitations do have some weight. In a nutshell, the language and background of the FIRREA statute show that Congress was attempting to aid the FDIC in its role as receiver or conservator in coping with a wave of bank failures and huge potential liabilities for the taxpayers. To this end, FIRREA is filled with provisions that vary ordinary contract rules in the FDIC's favor. *See, e.g., Lawson v. FDIC,* 3 F.3d 11, 13 (1st Cir.1993). The special FIRREA statute of limitations (most importantly, the special definition of accrual[4]) reflects this approach.

The argument for extending this particular break to assignees of FDIC owned notes, in the teeth of statutory language that does not mention assignees, is a practical one. Congress perhaps thought that the FDIC would itself sue on notes payable to failed banks, but the FDIC finds it convenient to sell these notes in bulk; and marketability may be enhanced if the private purchaser can use the longer statute of limitations. The clearest case is where the time to sue under normal statutes of limitation has already run by the time the FDIC makes the sale; the note would be essentially valueless to anyone other than the FDIC unless the benefit of the FIRREA statute of limitations "ran" with the note.

■ Granting that the policy interest is a real one, the case is very close. A principal task of federal courts is to implement imperfect federal statutes. *See Versyss Inc. v. Coopers and Lybrand,* 982 F.2d 653, 654 (1st Cir.1992). But it is one thing to resolve ambiguities in accordance with general policy and altogether another to extend a statute to a new class of beneficiaries that Congress did not even mention. Thus, we are not unsympathetic to the dictum in the Fourth Circuit expressing its reluctance to read the FIRREA statute as covering assignees. *See Hall,*

**3.** For example, the government sometimes has extra time in court proceedings, *e.g.,* Fed. R.App. P. 40(a), and it is hard to imagine that Beckley inherits this right along with the note. Two circuit courts have held that the FDIC's statutory grant of jurisdiction to sue in federal court does not transfer to the assignee of an FDIC-owned note. *See National Enters., Inc. v. Smith,* 114 F.3d 561 (6th Cir. 1997); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.,* 101 F.3d 1492, 1497 (3d Cir.1996). *But compare*

*FSLIC v. Griffin,* 935 F.2d 691, 695 (5th Cir. 1991).

**4.** Even before FIRREA, the federal government was already afforded six years to bring contract claims under a general statute of limitations. 28 U.S.C. § 2415(a). But among other advantages, FIRREA gives the FDIC six years from its appointment as receiver or conservator. 12 U.S.C. § 1821(d)(14)(B).

108 F.3d at 50 (allowing suit based on *state law*).

Nevertheless, virtually all of the circuits that have decided the issue on the merits have allowed the purchaser to make use of the FDIC's special statute of limitations, and we are loathe to create a conflict in uniform authority unless there is no choice. Statutory language should never be read without attention to purpose even when the language seems clear on its face, *see National Labor Relations Bd. v. Lion Oil Co.*, 352 U.S. 282, 288, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957); and while the majority reading is still something of a stretch, one can also view the outcome as a court-made "federal common law" rule as to when a right given to the FDIC should be treated as "running" with the assignment. *See* Chemerinsky, *Federal Jurisdiction* § 6.3 (3d ed.1999).

This conclusion might appear to resolve the case in Beckley's favor but it does not. Both the magistrate judge and the DiGeronimo estate assume that the FDIC statute of limitations can be utilized by Beckley, but each says that the New Hampshire statute still stands as an obstacle to the claim. Both the estate's position on appeal and that of the magistrate judge rest on the premise that the New Hampshire one-year statute is not "really" a statute of limitation and therefore is not in conflict with (and overridden by) the longer six-year FIRREA statute.

Although there is something to be said on both sides of the matter, *compare RTC v. Liebert*, 1995 U.S. Dist. LEXIS 8492, at *2 (C.D.Cal.1994), *with Davis v. Britton*, 729 F.Supp. 189, 191 (D.N.H. 1989), we think that the precise characterization of the New Hampshire statute does not matter here. Yes, the policy behind the one-year statute differs from the usual statute-of-limitations concern with stale claims and faded memory,[5] but the underlying thrust is the same: to prevent suits from being brought after a specific period of time. Under standard "conflict" preemption doctrine underpinned by the Supremacy Clause, *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), this enactment overrides any one-year limitation period imposed under state law.

Nevertheless, we agree that Beckley's suit is barred by the one-year New Hampshire statute. If the FDIC were suing, the FIRREA statute would allow it to do so despite the one-year statute, simply because Congress would be taken to have settled the matter. However, Congress did not purport to decide that an assignee should be entitled to the same benefit and, to the extent assignees are allowed to do so, it is for reasons of federal policy. No reason exists to extend this special benefit beyond the point where it serves the federal policy; and it does not do so here. *Cf.* Llewellyn, *The Bramble Bush* 189 (1960).

We have already noted, and accepted, the policy rationale for allowing the assignee the benefit of the FIRREA statute of limitations—namely, that in some situations it is essential to make obligations held by the FDIC marketable (and the debtor's plight is less sympathetic since the FDIC could itself still sue). But this policy rationale has real force, or at least most force, only where an obligation inherited by the FDIC from a failed bank is already in default (or nearly so) at the time that the FDIC re-assigns it; if not, the assignee can enforce it readily enough under an ordinary statute of limitations.

Indeed, as the Fifth Circuit cogently pointed out in *Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102 (5th Cir.1996), the rationale for extending the FIRREA limitation period to assignees has very little force where the note is not in default at

---

**5.** The purpose of such special restrictions, which are fairly common, is to facilitate the administration of estates, *see, e.g., Coffey v. Bresnahan*, 127 N.H. 687, 506 A.2d 310 (N.H. 1986); the distribution of assets to heirs and creditors normally cannot be completed until all claims have been resolved.

the time it is sold by the FDIC. In such a case, the assignee will always have some reasonable period within which to enforce the note after it goes into default. Accordingly, while the Fifth Circuit earlier adopted the general rule that the assignee could use the FIRREA statute, *Bledsoe,* 989 F.2d at 811, it drew the line at this point and refused to extend this benefit to the situation in which the note was not in default at the time of the FDIC's assignment. We think it was right to do so.

In the present case, the estate cannot take advantage of *Cadle* directly because (so far as we can tell) the note was in default at the time it was sold by the FDIC to Beckley and, of greater relevance, DiGeronimo himself was probably already subject to suit on the guaranty. The terms of the guaranty and of the note generally control when the claim against the guarantor accrues, typically either from the point at which the primary maker defaults on the guaranteed note or at some later point when a demand has been made on the guarantor for payment.[6] Although the parties have not briefed the issue in this case, it appears likely to us and we will assume that the ordinary statute of limitations had begun to run on the guaranty prior to its transfer to Beckley.

Nevertheless, the one-year New Hampshire statute had not begun to run at the time of the transfer because Beckley acquired the note and the guaranty in June 1994 and DiGeronimo did not die until July 1994. Accordingly, Beckley had the same one-year period to sue as any other person (apart from the FDIC) who happened to have a claim against a New Hampshire decedent. And because Beckley acquired the guaranty before this period even began to run, its position is closely analogous to the assignee in *Cadle* that acquired its note prior to the default. Put differently, there is no reason why a special statute of limitations is needed in this case to make the obligation marketable to a purchaser,

and absent such a reason, the policy behind state statutes of limitation—vivid in this case—ought to be respected.

■ We are not suggesting that in every case there should be a precise balancing of interests to decide whether the assignee should get the benefit of the special FIRREA statute of limitations. Rather, we adopt the principle in *Cadle* that the assignee does not get this benefit where an obligation is transferred by the FDIC *before* it is in default. And it is a natural extension of this principle that the assignee should not be able to avoid a state probate statute such as New Hampshire's when the maker of the note or guarantor had not died at the time that the instrument is transferred. This will require private purchasers of FDIC notes to be as diligent as other local plaintiffs, but it is a reasonable enough requirement that should not have any significant impact on the marketability of FDIC assets.

Having concluded that the New Hampshire statute bars Beckley's suit against the estate, we do not address an alternative ground offered by the estate as a reason to affirm the district court's judgment. The estate's premise is that the FDIC agreed to release DiGeronimo from his guaranty prior to the March 16, 1994, sale. Specifically, DiGeronimo says that the FDIC would be barred from enforcing the guaranty by accord and satisfaction and by estoppel, and, as Beckley purports to stand in the FDIC's shoes, it should be similarly barred. Beckley offers a series of technical objections to this argument, including the assertion that such defenses had not been adequately pled by the estate under Fed.R.Civ.P. 8(c). Needless to say, Beckley's position is unattractive from an equitable standpoint, assuming that RECOLL did promise a release. But technicalities sometimes prevail—for reason of long-term advantage to society—over immediate equities. Yet it is by no means

---

**6.** *See Laura Thorn, Ltd. v. Alletzhauser,* 71 F.3d 991, 993 (1st Cir.1995); *RTC v. Gold,* 30 F.3d 251, 253 (1st Cir.1994); *United States v. Gottlieb,* 948 F.2d 1128, 1129 (9th Cir.1991).

clear that Beckley's multiple objections to the estate's alternative grounds could be resolved without further proceedings in the district court. It is for this reason that we have assumed *dubitante* throughout that Beckley may have a valid claim on the guaranty, and we have faced and resolved the difficult statute of limitations issues on that assumption.

Turning now to the estate's own appeal in No. 98–1464, it presents complications that make the statute of limitations issue look tame. However, in the meantime, Beckley has reportedly failed in its effort to obtain a waiver of the one-year New Hampshire statute, making the guaranty effectively unenforceable. Under these circumstances, counsel for the estate agreed at oral argument that the affirmative relief that DiGeronimo sought in No. 98–1464 is unnecessary should it prevail in the other appeal. Accordingly, we dismiss that appeal, subject always to reinstatement on motion if for some reason the issue should cease to be moot.

In No. 96–2292, the judgment of the district court is *affirmed* with costs to be awarded in favor of appellee. In No. 98–1464, the appeal is *dismissed* without prejudice and on this appeal, each side shall bear its own costs.

*It is so ordered.*