# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO.03-02-00214-CV

---

### The Cadle Company, Appellant

### v.

### George Whiteside; and American Physician=s Service Group, Inc., Appellees

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 258315, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

---

Appellant The Cadle Company (ACadle@) sued appellees George Whiteside and American Physician=s Service Group, Inc. (collectively, Aappellees@) to recover on a note. Appellees moved for summary judgment, asserting that Cadle=s claim was barred by limitations. The trial court granted summary judgment in favor of appellees. By one issue presented, Cadle now appeals. We affirm.

## BACKGROUND

On January 10, 1989, Whiteside executed a promissory note made payable to NCNB Texas National Bank. On that same date, American Physician=s Service Group, Inc. entered into a Guaranty Agreement, guaranteeing Whiteside=s payment of the note. According to the terms of the note, Whiteside was to make monthly payments in the amount of $318.51 through the due date, January 10, 1992. On the due date, Whiteside was to remit a final payment of $323.88. Whiteside, however, failed to pay the note according to its terms, and accordingly, defaulted on January 10, 1992, the due date.

Sometime before January 10, 1992, the note was assigned to the Federal Deposit Insurance Corporation (Athe FDIC@). On July 21, 1992, the FDIC transferred the note to Cadle. About two years later, Whiteside made six partial payments to Cadle. The last of the partial payments is dated November 14, 1995.

On August 10, 2001, Cadle filed suit on the note against both appellees. Appellees moved for summary judgment, asserting that Cadle=s claim was barred by the statute of limitations. The trial court granted summary judgment in favor of appellees. This appeal follows.

## DISCUSSION

A traditional motion for summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact to be decided and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). All doubts are resolved against the movant, and the reviewing court must view the evidence in the light most favorable to the nonmovant. *Lear Siegler*, 819 S.W.2d at 471. When a defendant moves for summary judgment based on an affirmative defense, the defendant, as movant, bears the burden of conclusively proving each essential element of its defense. *See Rhone-Poulenc*, 997 S.W.2d at 223; *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997).

Both appellees acknowledged in their motions for summary judgment that because the note was already in default at the time the FDIC assigned it to Cadle, Cadle was entitled to the benefit of the federal six-year statute of limitations. *See* 28 U.S.C.A. ' 2415 (1994); 12 U.S.C.A. ' 1821 (2001).[1] This

---

**1** Two separate statutes apply in this case. Section 2415, the more general of the two, applies to actions on contracts brought by the United States or its agencies and includes a tolling provision:

> (a) . . . [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment . . . .

28 U.S.C.A. ' 2415 (1994).

Section 1821 was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (AFIRREA@) and applies to contractual claims held by the FDIC when appointed as a receiver or conservator of a failed bank:

> **(A) In general**
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall beC
>
> (i) in the case of any contract claim, the longer ofC
>
> (I) the 6-year period beginning on the date the claim accrues; or
>
> (II) the period applicable under State law; . . . .

12 U.S.C.A. ' 1821(d)(14) (2001).

Both statutes provide a six-year limitations period, and assignees of the FDIC are entitled to the same six-year limitations period under both statutes. *See SMS Fin., L.L.C. v. ABCO Homes, Inc.*, 167 F.3d 235, 240 (5th Cir. 1999). The dispute in this case concerns the applicability of the tolling provision

six-year limitations period begins to run the later of (1) the date that the FDIC acquires the note or (2) the date on which the cause of action accrues, or in this case, the date of default. 12 U.S.C.A. ' 1821.[2] Construing the pleadings in the light most favorable to Cadle as we are required to do, the latest date on

---

included in section 2415.

[2] Section 1821 provides:

**(B) Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later ofC

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C.A. ' 1821(d)(14).

4

which Whiteside could have defaulted was the due date on the note, January 10, 1992. It is unclear when the FDIC originally acquired the note; however, it must have acquired the note before transferring it to Cadle, and Cadle acquired the note on July 21, 1992. Thus, the latest date that the FDIC could have acquired the note is July 21, 1992. And, accordingly, the latest date that the statute of limitations could have begun to run is July 21, 1992. Cadle did not file its cause of action until August 10, 2001Cmore than six years after the latest date that the statute of limitations could have begun to run.

In response to appellees= motions for summary judgment, Cadle asserted that Whiteside=s partial payments triggered the accrual of a new cause of action and a new six-year limitations period. Relying on section 2415, Cadle maintained that because it was entitled to the six-year statute of limitations provided in that statute, it was also entitled to take advantage of the tolling provision in the statute.[3] Similarly, Cadle argues on appeal that when the FDIC assigned the note to Cadle, Cadle acquired all of the statute of limitations rights attendant with the note. Because either acknowledgment of a debt or partial payments on a debt tolls the limitations period under section 2415, the six-year limitations period began to run anew after the last partial payment was made. For support, Cadle relies on *SMS Financial, L.L.C. v. ABCO Homes, Inc.*, 167 F.3d 235, 240-41 (5th Cir. 1999).

---

[3] In its responses to appellees= motions for summary judgment, Cadle asserted the following: APlaintiff, as an assignee of the Federal Deposit Insurance Corporation, is entitled to the application of federal statutes of limitations and of tolling.@ For authority, Cadle cited both section 2415 and section 1821 and *SMS Financial, L.L.C. v. ABCO Homes, Inc.*, 167 F.3d 235 (5th Cir. 1999). Thus, the only issue presented by Cadle to the trial court was whether it was entitled to benefit from the federal tolling provision found in section 2415; likewise, that is the only issue before us on appeal. *See Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677-78 (Tex. 1979).

In *SMS Financial*, the FDIC transferred a note to SMS Financial. At the time of the transfer, the maker of the note, ABCO Homes, was in default on the note. A few months after the note matured, but before SMS Financial acquired the note, ABCO made two payments on the note. The Fifth Circuit held that section 2415 and section 1821 should be construed together and that the tolling provision in section 2415 could apply to an assignee of the FDIC. *Id.* at 242. In that case, however, the event that triggered the tolling of the statute of limitations, *i.e.*, the payments on the note and a written acknowledgment of the debt, occurred *before* the FDIC transferred the note to SMS Financial. In this case, Whiteside=s partial payments were made *after* the FDIC transferred the note to Cadle. *SMS Financial* is therefore not on point.

Although we have found no Texas case directly on point, the supreme court has discussed the policy considerations supporting the application of the federal statute of limitations to assignees of the FDIC. In *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562 (Tex. 2001), the supreme court recounted the two justifications generally cited as support for extending the six-year limitations period provided by section 1821 to assignees of the FDIC. First, extending the federal statute of limitations to assignees of the FDIC ensures a market for the assets of failed depositories. Without the extension of the federal limitations period, the FDIC would be forced to prosecute all notes where state limitations had expired, which would be contrary to the policies behind the statute=s enactment. *Id.* at 573; *accord FDIC v. Bledsoe*, 989 F.2d 805, 810-11 (5th Cir. 1993). The second justification is explained by the premise that A[a]n assignee stands in the shoes of his assignor.@ *Wolf*, 44 S.W.3d at 573 (quoting *General Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 520 (Tex. App.CFort Worth 1995, no writ));

*accord Bledsoe*, 989 F.2d at 810. In other words, the FDIC=s right to an extended limitations period is part of the bundle of rights that it transfers to subsequent assignees. *Wolf*, 44 S.W.3d at 573. The court, however, refused to extend the federal statute of limitations when these policy considerations were not served. *Id.* at 574; *accord Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105-06 (5th Cir. 1996). Accordingly, if a cause of action has not yet accrued when the FDIC transfers a note, the transferee is not entitled to benefit from the federal limitations period. *Wolf*, 44 S.W.3d at 573; *1007 Joint Venture*, 82 F.3d at 106.

Similarly, the United States Court of Appeals for the First Circuit has held that the federal statute of limitations does not apply to assignees of the FDIC exactly as it would to the FDIC. *Beckley Capital Ltd. P=ship v. DiGeronimo*, 184 F.3d 52 (1st Cir. 1999). In *Beckley*, DiGeronimo guaranteed a note that was in default while the FDIC held it. *Id.* at 54. The FDIC sold the note to Beckley, and DiGeronimo died a month later. *Id.* Because the note was already in default when the FDIC sold it to Beckley, DiGeronimo was already subject to suit while the FDIC held the note. Beckley sued DiGeronimo=s estate for the outstanding balance on the note. *Id.* A state statute, however, required that suit be brought against an estate within one year from the decedent=s death, which Beckley failed to do. *Id.* The First Circuit acknowledged that, had the FDIC sued the estate, FIRREA would have allowed it to do so despite the state one-year statute of limitations. *Id.* at 57. Extending this benefit to the FDIC=s assignees, however, is not justified under federal policy considerations, and therefore, the court held that the assignees are not entitled to the same benefits where no federal policy is served. *Id.* at 57-58.

7

Both the Texas Supreme Court and the First Circuit recognized that the federal statutes do not expressly extend the benefit of the six-year limitations period to the FDIC=s assignees. *Wolf*, 44 S.W.3d at 571; *Beckley*, 184 F.3d at 55-57;[4] *accord Jackson v. Thweatt*, 883 S.W.2d 171, 174, 175 (Tex. 1994). Rather, the courts relied on policy considerations in extending the federal limitations period to the FDIC=s assignees. Indeed, the courts refused to apply the federal limitations period when it does not advance federal policy considerations.

As in the *Beckley* case, no reason exists in this case to extend the benefit of a six-year limitations period beyond the point where it serves the federal policy, and it does not do so here. The refusal to expand the federal statute of limitations to include a tolling provision does not significantly impact the marketability of the FDIC=s notes; a market exists for notes, such as the one in this case, when the federal statute of limitations has not yet run at the time the note is transferred, even without the tolling provision. Although, as Cadle argues, the note might not have the same value without the benefit of the tolling provision, this Amore money@ argument is an insufficient reason to extend the tolling provision to an assignee of the FDIC when the tolling provision was not triggered before the transfer of the note. *See 1007 Joint Venture*, 82 F.3d at 106. At the time Cadle acquired the note, it was aware that it would benefit from a six-year limitations period. No partial payments had been made before Cadle acquired the note.

---

[4] Both cases addressed only the applicability of section 1821; the disputes did not concern section 2415. Nevertheless, because assignees of the FDIC are entitled to the same limitations under both statutes, *see SMS Fin., L.L.C.*, 167 F.3d at 240, we find both cases instructive.

Any subsequent acknowledgment of the debt would result in the same limitations period to sue under state law as any other person with a similar claim (apart from the FDIC) would have in this state.

Moreover, although the extended limitations period may be a part of the Abundle of rights@ that are transferred by the FDIC to subsequent assignees, the limitations period attaches only to an accrued claim; it has no significance independent of a claim to which it applies. *Wolf*, 44 S.W.3d at 574. AThe six-year provision does not >attach= to the bundle of rights passed to subsequent assignees unless FIRREA=s express terms actually trigger the right.@ *Id.* Whiteside=s default on the note triggered the six-year limitations period that was transferred to Cadle. Because no payments were made before the transfer, however, no tolling rights attached and thus could not have passed to subsequent assignees.

## CONCLUSION

Because the note was in default when the FDIC assigned it to Cadle, Cadle was entitled to benefit from the federal six-year statute of limitations. Because it failed to bring its claim within this six-year period, Cadle=s claim was barred by the statute of limitations. Although Whiteside made several partial payments, we decline to apply to assignees of the FDIC the tolling provision found in section 2415, when the statute does not expressly state that it applies to assignees of the FDIC and no federal policy would be served by the application of the tolling provision. We thus hold that appellees established their affirmative defense as a matter of law and affirm the trial court=s summary judgment.

9

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed:   October 3, 2002

Do Not Publish