NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1258                                    Appeals Court

   JB MORTGAGE CO., LLC  vs.  JORDAN L. RING, THIRD, & another.[1]


                       No. 15-P-1258.

       Middlesex.    May 18, 2016. - August 26, 2016.

          Present:  Katzmann, Carhart, & Sullivan, JJ.



          Guaranty.  Limitations, Statute of.



     Civil action commenced in the Superior Court Department on
March 4, 2014.

     The case was heard by Peter B. Krupp, J.


     Michael P. Utke (Steven F. Smoot with him) for the
plaintiff.
     Luke Rosseel for Jordan L. Ring, III.


     KATZMANN, J.  The plaintiff, JB Mortgage Co., LLC, appeals

from a judgment of the Superior Court dismissing its action to

enforce defendant Jordan L. Ring, III's guaranty of a promissory

note secured by a mortgage on real property.  The trial judge

---

     [1] Edward C. Simonian.  The proceedings against Simonian were
stayed as a result of his bankruptcy and were ultimately
dismissed by the plaintiff.  Simonian is not a party to this
appeal.

found that the plaintiff's suit was barred by the applicable statute of limitations because it was filed more than twenty years after a default existed on the underlying note. The central issue before us is when the cause of action on the guaranty of the note accrued. We affirm.

Background. On July 21, 1988, Edward C. Simonian, as trustee of the DX Trust (trust), executed a promissory note in favor of Bank Five for Savings (bank) in the face amount of $400,000. Under the note, the trust was required to make monthly payments of principal and interest, with all remaining unpaid balances due two years from the date of execution. In addition to other penalties for failure to make timely payments, the note provided that, "If default be made in the payment of any installment under this note, or if there is a failure to carry out the terms and conditions of the mortgage or any other instrument given as security for this note, . . . the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this note."[2] The note was secured by a first mortgage on commercial property in Hull.

The note was also backed by a guaranty executed by Simonian and Ring under seal the same day, July 21, 1988. In pertinent part, the guaranty stated:

---

[2] See note 9, infra.

> "[T]he undersigned hereby guarantees to the [b]ank the prompt payment and the faithful performance and observance of every liability, obligation, covenant and condition . . . to be paid, performed or observed by the [trust] under said [p]romissory [n]ote, [r]eal [e]state [m]ortgage and [s]ecurity [a]greement, [a]ssignment of [l]eases and [r]entals, and [f]inancing [s]tatement.
>
> "The liability of the undersigned hereunder is direct and unconditional, and joint and several, and the [b]ank shall not be required to pursue or exhaust any of its rights or remedies against the [trust], or any other guarantor or endorser . . . or to resort to any security before enforcing this [g]uaranty against any of the undersigned."

On February 28, 1991, the bank and the trust agreed to extend the term of the note until July 21, 1994, and to increase the interest rate.[3]  Thereafter, the bank went into liquidation and, on September 20, 1991, the Federal Deposit Insurance Corporation (FDIC) became the liquidating agent.  On May 26, 1994, the FDIC foreclosed on the property secured by the mortgage, selling it for $165,000 and leaving a substantial deficiency.  As of December, 1995, the trust still owed an outstanding balance of $362,193.26 with a total amount then due of $417,591.53.  The interest on the debt was continuing to accrue at 11.75 per cent annually.

---

[3] By its terms, the guaranty was not to be affected by any modification or alteration of the underlying note or related agreements, to which the guarantors were deemed to have assented.  In any event, Ring and Simonian each individually consented to the modification as guarantors.

Pursuant to a chain of assignments from the FDIC through several intermediary holders, the trust's debt was ultimately acquired by the plaintiff. The plaintiff commenced this action on March 4, 2014, to, inter alia, enforce the guaranty against Ring.

In an October 8, 2014, memorandum of decision and order on various pending motions, including the parties' initial cross motions for summary judgment, the judge initially concluded that the action was timely under the applicable twenty-year statute of limitations of G. L. c. 260, § 1, whether measured from the modified due date on the note or the date of the foreclosure. The judge, however, denied summary judgment on the basis that there was a material dispute of fact whether the assignments in the chain leading to the plaintiff's acquisition of the trust's debt included the guaranty.

After the parties had once again cross-moved for summary judgment, the judge concluded in a memorandum and order dated April 1, 2015, that the chain of assignments was sufficient to enable the plaintiff to enforce the guaranty, but questioned the correctness of the statute of limitations analysis in his previous decision. Specifically, the judge found that if the foreclosure of the security was accomplished by May 26, 1994, there was "compelling weight" to the inference that the trust must have been in default prior to March 4, 1994, which would

have been more than twenty years before the plaintiff commenced this action. Given the terms of the guaranty, the judge reasoned that a cause of action would have accrued and the statute would have begun to run upon the failure of the trust to make a payment when due or meet some other obligation under the note. The judge, however, yet again denied summary judgment because, despite the compelling inference, the record was not sufficient to definitively resolve the factual question of when the default took place.

Although the case was marked for trial, the parties agreed to treat a final pretrial conference hearing as a jury-waived trial. Based on that proceeding, the judge found that by June 21, 1993, the note was already in default. Accordingly, the judge ruled that the plaintiff's complaint was barred by the applicable twenty-year statute of limitations.

Discussion. 1. Standard of review. The parties agree on the facts as recited and that the plaintiff's action is subject to the twenty-year statute of limitations applicable to contracts under seal pursuant to G. L. c. 260, § 1. The sole point of disagreement is the accrual date of the cause of action, a legal question that we review de novo based on the undisputed facts. See Crocker v. Townsend Oil Co., 464 Mass. 1, 5 (2012).

2.  Accrual date.  Although the plaintiff initially contended in its brief that the accrual date should be determined with reference to a now-repealed provision of the Uniform Commercial Code (UCC), it conceded at oral argument that the UCC was inapplicable to the personal guaranty at issue here, which is a separate contract and not a negotiable instrument.[4] The plaintiff nonetheless insists that the cause of action under the guaranty could not have accrued until the date of the foreclosure sale at the earliest.  We disagree.

"The terms of the guaranty and of the note generally control when the claim against the guarantor accrues, typically either from the point at which the primary maker defaults on the guaranteed note or at some later point when a demand has been made on the guarantor for payment."  Beckley Capital Ltd. Partnership v. DiGeronimo, 184 F.3d 52, 58 (1st Cir. 1999).[5]  See Phoenix Acquisition Corp. v. Campcore, Inc., 81 N.Y.2d 138, 141 (1993) ("The contractual language fixes the boundaries of the legal obligation of the guarantor").  Thus, the statute begins to run on different guaranties at different times.  See, e.g., National Shawmut Bank of Boston v. Fitzpatrick, 256 Mass. 125,

---

[4] Accordingly, we do not address the plaintiff's arguments under the former G. L. c. 106, § 3-122.

[5] The plaintiff does not contend that its status as a downstream assignee of the FDIC affects the limitations period here.  See Beckley Capital Ltd. Partnership, supra at 55.

131 (1926) (statute of limitations on guaranty securing payment of note payable on demand begins to run on date of execution of guaranty); McDonald v. National Enterprises, Inc., 262 Va. 184, 192-193 (2001) (statute of limitations did not begin to run until demand was made where guarantor agreed to pay all sums owed by borrower when in default "upon demand by the [l]ender, without notice other than such demand").

Here, the defendant guaranteed prompt payment and faithful performance of every condition under the note and specifically relieved the holder from having to pursue or exhaust any rights or remedies against the trust or the security before enforcing the guaranty. As the Supreme Judicial Court explained as long ago as Roth v. Adams, 185 Mass. 341, 343 (1904), where the "punctual performance on the part of the [principal] of the covenants of the [contract] was guaranteed," failure by the principal to make payment "at the time when it became due and payable would be a breach of his covenant, and a cause of action would at once accrue to the [obligee] against the defendant." Accordingly, the cause of action against the defendant accrued upon the trust's default.

The plaintiff contends that the cause of action against the guarantor could not have accrued until after the foreclosure sale because the amount of any deficiency remaining postforeclosure could not have been determined at that time.

This argument ignores the express terms of the guaranty, which provided that the holder need not "pursue or exhaust any of its rights or remedies against the [trust]" or "resort to any security before enforcing this [g]uaranty against" Ring. "[W]hile [Ring] might have made his promise to pay contingent on the failure of his principal to pay any judgment the [note holder or its assignee] might recover if he failed to keep this covenant, it is a sufficient answer to say that he did not do so, but was content to make his liability unconditional and absolute." Ibid. See Seabury v. Sibley, 183 Mass. 105, 107 (1903) ("A creditor is not bound to sue the principal debtor, but has the right to elect to sue the guarantor").

Although Roth was decided more than a century ago, its reasoning remains sound. We note that it is consistent with longstanding precedent and more recent decisions from other jurisdictions.[6] Cadle Co. v. Webb, 66 Mass. App. Ct. 269, 271 (2006), on which plaintiff relies, is not to the contrary. The

---

[6] See Cummins v. Tibbetts, 58 Neb. 318 (1899) ("A cause of action upon the guaranty accrued the moment default was made in the payment of the note; Production Credit Assn. of Midlands v. Schmer, 233 Neb. 749, 756 (1989) ("The statute of limitations begins to run against a contract of guaranty the moment a cause of action first accrues. . . . A guarantor's liability arises when the principal debtor defaults"); Western Bank of Albuquerque v. Franklin Dev. Corp., 111 N.M. 259, 260-261 (1991) (collecting cases) "); Estate of Bitker, 251 Wis. 538, 544 (1947) ("When the principal fails to perform the acts performance of which is guaranteed the guarantors are liable from the time of the breach").

court in Cadle Co. did not actually use the foreclosure date as the accrual date but only as a point of reference for a suit that had to be filed within six years of accrual and was not filed until eleven years after foreclosure and so was obviously filed more than six years after accrual. The question of the accrual date was not actually before the court, nor did the court address it.

To be sure, guaranties can be drafted in such a way that the statute would not begin to run until the creditor has proceeded against the security. See, e.g., Whitehurst v. Duffy, 181 Va. 637, 642-643 (1943) (where guaranty expressly provided that guarantor's liability could not be determined until creditor proceeded against security, guaranty was "conditional promise" and guarantor "was not to be called upon to pay the note, or the balance due thereon, until it had been 'determined' by a foreclosure . . . that the security was insufficient to liquidate the debt"). However, that was not the case here. See Pierce v. Merrill, 128 Cal. 464, 469 (1900) (rejecting contentions that guaranty was subject to condition precedent, that security be exhausted before guarantors' liability arose and before any action could be maintained against them, and that statute did not begin to run until mortgage was foreclosed and deficiency ascertained where "guaranty was absolute and unconditional" and "a breach thereof occurred, upon which to

base an action, when the note therein mentioned fell due and remained unpaid").

As aptly stated in a decision from another jurisdiction: "Whether or not the condition contended for [by the plaintiff] attached to the guaranty is to be determined from the language of the contract. . . . The language of the contract does not import any such condition, but, on the contrary, negatives any presumption to that effect.  To hold that payment was not to be made by defendant[] until after a foreclosure of the mortgage would be to ignore" the terms of the guaranty.  Id. at 470.[7] Because the judge found that the note was in default by June 21, 1993,[8] and because the holder was free to proceed against the

---

[7] Contrary to the plaintiff's contentions, that the guaranty may have covered obligations in addition to the note does not preclude accrual of the cause of action of defendant's guaranty of the note at the time of default thereunder.

[8] In so holding, the trial judge relied on a summons issued in a Land Court action brought pursuant to the Soldiers and Sailors Civil Relief Act of 1940, now known as the Servicemembers Civil Relief Act (Act), recorded in the Plymouth county registry of deeds on June 21, 1993.  The trial judge and the parties refer to this document as a complaint to foreclose, but an action brought pursuant to the Act is limited to a determination whether the mortgagor is entitled to the benefit and protections of the Act.  See Beaton v. Land Court, 367 Mass. 385, 388 (1975); HSBC Bank, USA, N.A. v. Matt, 464 Mass. 193, 194 (2013).  We note that it was reasonable for the judge to conclude from the existence of the Soldiers' and Sailors' action as of June 21, 1993, that the loan was in default by that date, and certainly before March 4, 1994, the last day on which a default could have occurred to bring the action within the twenty-year statute of limitations.

defendant under the guaranty upon default,[9] the statute of limitations would have run no later than June 21, 2013, nearly nine months before the plaintiff commenced this action. The action was therefore properly dismissed as time barred.[10]

<u>Judgment affirmed</u>.

---

[9] No party has suggested that the note was not properly accelerated as of some date prior to March 4, 1994.

[10] The defendant's motion for appellate fees and costs is denied. The plaintiff's appeal is not frivolous. See Mass. R.A.P. 25, as appearing in 376 Mass. 949 (1979); <u>Worcester</u> v. <u>AME Realty Corp</u>., 77 Mass. App. Ct. 64, 72-73 (2010).